GRIFFIN v. LUMBER CO.

(Filed March 13, 1906).

*Contracts — Deceit — Fraud — Deeds — Damages — Market Value—Instructions—Harmless Error.*

1.  Where the parties made a contract for the sale of certain timber, reserving a well defined class of trees, and defendant undertook to reduce the contract to writing, in accordance with its terms, but knowingly included the reserved timber and falsely represented to plaintiff that said timber was reserved in the deed, and by means of this false representation, procured the execution of the deed, the plaintiff has a cause of action for deceit, and this is not dependent upon the removal of the timber.

2.  Where a party signs the paper-writing which he intended, but is induced to do so by means of some false representation, this is fraud in the representation or treaty, and not in the *factum*.

3.  Before signing a deed the grantor should read it, or, if unable to do so, should require it to be read to him, and his failure to do so, in the absence of any fraud or false representation as to its contents, is negligence, for the result of which the law affords no redress, but when fraud or any device is resorted to by the grantee which prevents the reading, or having read, the deed, the rule is different.

4.  One who chooses to make positive assertions without warrant, shall not excuse himself by saying that the other party need not have relied upon him. He must show that his representation was not in fact relied upon.

5.  In an action for deceit in falsely securing the execution of a deed, conveying timber which was reserved, where the defendant requested the court to instruct the jury that the extent of his liability was the "market" value of the timber at the date of the deed, there was no error committed in giving the instruction with the word "market" stricken out, the court saying, that while the market value should be considered as evidence of its value, it should not control—the question was what was its real value.

6. Where the court instructed the jury that the burden was upon the plaintiff to show the alleged fraud by testimony clear, cogent and convincing, and in concluding the charge, said: "The burden of all the issues is on the plaintiff and the jury cannot find any one in their favor unless upon the greater weight of the testimony," the last remark, considered in the light of the charge given in the beginning, could not have misled the jury.

ACTION by John D. Griffin and another against the Roanoke Railroad and Lumber Company, heard by *Charles M. Cooke* and a jury, at the December Term, 1905, of the Superior Court of MARTIN.

Plaintiffs alleged that on the first day of November, 1899, they made a parol agreement with defendant company to sell to it all of the timber on their land measuring twelve inches at the stump when cut, except the long leaf pine, which was expressly reserved. Defendant's agent, with whom the agreement was made, proposed that he would prepare the deed to which plaintiffs assented. Thereafter said agent presented to them for execution, a deed which he stated was drawn in accordance with said agreement. Plaintiffs were unable to read the deed and requested the said agent to do so. After reading a few lines he said that he did not have time to read the remainder, but assured plaintiff that it was drawn in accordance with their agreement and that the long leaf pine was reserved. Relying upon said representation, plaintiffs executed the deed. Plaintiffs thereafter learned the long leaf pine timber was not reserved from the operation of the said deed; that the representation made by defendant's agent that said timber was reserved was false and fraudulent. That thereafter the defendant sold and conveyed the said timber, including the long leaf pine, to the Dennis Simmons Lumber Company for value and without notice of the fraud which had been practiced upon plaintiffs. That by reason of the conveyance of said timber to said lumber company, plaintiffs have no remedy against said purchaser to

have correction of said deed. That the value of the long leaf pine timber was $221. Defendant denied the material allegations, admitting the sale to the Dennis Simmons Lumber Co. It was conceded that no portion of the timber was cut from the land when the summons in this action was issued. His Honor permitted the plaintiffs to amend their complaint by alleging that the timber had been cut since the date of the summons. Defendant excepted. The court submitted issues directed to the inquiry whether there was an agreement that the long leaf pine was reserved; whether the plaintiffs were induced to execute the deed by the false and fraudulent representations of the defendant's agent and the value of the long leaf pine timber. The jury responded to the issues affirmatively and fixed the value of the timber at $221. Judgment was signed for plaintiffs, to which defendant excepted and appealed.

*H. W. Stubbs* for the plaintiffs.
*A. O. Gaylord* for the defendant.

CONNOR, J., after stating the case: The record discloses a number of exceptions. The substantial merits of the controversy group themselves around three questions, all of which are properly raised upon the record and argued by counsel, orally and in his well considered brief. At the close of the entire evidence, defendant demurred and moved for judgment as of nonsuit pursuant to the statute. The first cause of demurrer is: "Because no entry had been made by defendant or the Dennis Simmons Lumber Company and no timber had been cut by either, nor by anyone under their authority when the action was brought." Defendant maintains that no action can be maintained for injury to real estate, unless prior to the date of the writ, a trespass has been committed. This is undoubtedly true and if plaintiffs' action was for trespass, His Honor would have granted the motion for judg-

ment of nonsuit. The plaintiffs' cause of action is for deceit, in that they have sustained an actionable wrong by false and fraudulent representation of defendant's agent. The motion to nonsuit being founded upon the admission that the transaction is correctly stated in the complaint as testified to by plaintiffs, we may examine the proposition maintained by defendant from that point of view. The parties made a contract for the sale of certain timber, reserving a well defined class of trees. Defendant's agent undertook to reduce the contract to writing, in accordance with its terms. He knowingly included the timber which was reserved and falsely represented to plaintiffs that said timber was reserved in the deed. By means of this false representation, he procured the execution of the deed. It would seem clear, both upon reason and authority, that by this conduct a right of action accrued to plaintiffs. If the matter had remained in this condition plaintiff could have brought an action in the nature of a bill in equity for correction of the deed or sued, as in trespass on the case, for deceit. The case of *Pasley v. Freeman,* 3 Tenn. Rep., 51 (2 Smith L. C., 1300,) settled the principle that "A false affirmation made by the defendant with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit." *Kent, C. J.,* in *Upton v. Vail,* 6 Johns., 181, after expressing his approval of the doctrine announced in *Pasley v. Freeman,* said: "The case went not upon any new ground, but upon the application of a principle of natural justice, long recognized in the law, that fraud or deceit, accompanied with damage, is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence." It has been the accepted law in American jurisprudence and was discussed and adopted by this court in an opinion containing a "mine of learning" by *Judge Battle,* in *March v. Wilson,* 44 N. C., 144. After an exhaustive review of the English and American authorities, the learned justice con-

cludes: "The principle upon which they were decided is—
that where there was fraud by the defendant, either in word
or deed, resulting in damage to the plaintiff, he might sustain
an action on the case for such damage." Whatever doubt
may have existed in regard to the right to maintain an action
for deceit relating to contracts for the sale of land respecting
acreage, title, etc., is removed by the decision in *Walsh v.
Hall,* 66 N. C., 233. *Dick, J.,* after noting the general rule
of *caveat emptor,* says: "But in cases of positive fraud a dif-
ferent rule applies.  *  *  *  The law does not require a
prudent man to deal with every one as a rascal, and demand
covenants to guard against the falsehood of every representa-
tion which may be made as to facts which constitute material
inducements to a contract.  *  *  *  If representations
are made by one party to a trade which may be reasonably
relied upon by the other party—and they constitute a ma-
terial inducement to the contract—and such representations
are false within the knowledge of the party making them,
and they cause loss and damage to the party relying on them,
and he has acted with ordinary prudence in the matter, he is
entitled to relief in any court of justice. In our courts the
injured party may bring a civil action in the nature of an
action on the case for deceit, and recover the damages which
he has sustained; and if the remedy will not afford adequate
relief he may invoke the equitable jurisdiction of the court
to rescind the contract." The learned justice concedes that
in saying that the injured party who had been induced by
false and fraudulent representation to take a deed for a tract
of land to which the grantor had no title, could maintain an
action for damages "seems to be in conflict with previous de-
cisions of this court," citing *Lytle v. Bird,* 48 N. C., 222;
*Credle v. Swindell,* 63 N. C., 305. *Bynum, J.,* in *Hill v.
Brower,* 76 N. C., 124, says, "The maxim of *caveat emptor*
does not apply in cases where there is actual fraud." In that
case the fraud consisted in a false and fraudulent represen-

tation in regard to the number of acres in a tract of land. *Knight v. Houghtalling,* 85 N. C., 17; Pollock on Torts, 272; Jaggard on Torts, 570. We think it clear that the plaintiffs, upon the facts testified to by them, had a cause of action for the fraud practiced by defendant's .agent. This right is not dependent upon the removal of the timber. The plaintiff's case is very much strengthened by the fact that defendant company has reaped the fruits of the fraud of its agent by selling the timber to the Dennis Simmons Lumber Company, without notice of plaintiff's right to have correction of the deed. Defendant, however, insists that the fraud practiced by its agent in procuring the execution of the deed was in the *factum,* and not in the treaty. That the deed was absolutely void—was not the act and deed of plaintiffs and its vendee acquired no title to the long leaf pine. It is true that the courts recognize the distinction between the two classes of fraud. It is possible that if defendant's contention was correct, the measure of damages might be different. We are, however, of the opinion that the fraud practiced upon the plaintiffs is in the representation or treaty; the plaintiffs signed the paper-writing which they intended to sign, the fraud consists in the false representation by which such signatures were obtained. The distinction is pointed out by *Battle, J.,* in *McArthur v. Johnson,* 61 N. C., 317, in which he says, "An instance of fraud in the *factum* is when the grantor intends to execute a certain deed, and another is surreptitiously substituted for it." Referring to instances of fraud in the treaty or representation, he says: "In all of them it will be seen that the party knowingly executes the very instrument which he intended, but is induced to do so by means of some fraud in the treaty or some fraudulent representation or pretense." *Shepherd, C. J.,* discussing the question in *Medlin v. Buford,* 115 N. C., 269, says: "A deed made by this species of fraud is said to be void, but it will be found upon examination that this term is indiscriminately used in

connection with any deed which may be avoided either at law
or in equity.   *   *   *   The distinction between void and
voidable deeds becomes highly important in its consequences
to third persons, because nothing can be founded upon a deed
that is absolutely void, whereas from those which are only
voidable, fair titles may flow." The defendant insists that
whatever rights or causes of action may have accrued to plain-
tiffs are forfeited by their failing to require the deed to be
read to them. That one of the essential elements of an action
for deceit is that the fraud of the defendant was calculated
to deceive and reasonably relied upon by plaintiffs. It is ele-
mentary learning that common prudence requires that before
signing a deed the grantor should read it, or, if unable to do
so, should require it to be read to him, and his failure to do
so, in the absence of any fraud or false representations as to
its contents, is negligence, for the result of which the law
affords no redress. *School Committee v. Kesler,* 67 N. C.,
443. But when fraud or any device is resorted to by the
grantee which prevents the reading, or having read, the deed,
the rule is different. *Montgomery, J.,* in *Dellinger v. Gillespie,*
118 N. C., 737, says: "It is plain that no deceit was practiced
here. It was pure negligence in the defendant not to have
read the contract. There it was before him, and there was
no trick or device resorted to by the plaintiff to keep him
from reading it." *Judge Bynum,* in *Hill v. Brower, supra,*
says: "The representation of B and his exhibit of the map
and plat of the land, and his calculation of the quantity, not
only caused the defendant to make no survey, but put to sleep
any further inquiry as to the quantity of the land. An
actual survey was thus prevented by the artifice and contri-
vance of the other party." The present condition of the law
upon the subject is well stated in Pollock on Torts, 293. "It
seems plausible at first sight to contend that a man who does
not use obvious means of verifying the representations made
to him does not deserve to be compensated for any loss he may

Griffin *v.* Lumber Co.

incur by relying on them without inquiry. But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant; and it is now settled law that one who chooses to make positive assertions without warrant, shall not excuse himself by saying that the other party need not have relied upon them. He must show that his representation was not in fact relied upon. * * * In short, nothing will excuse a culpable misrepresentation short of proof that it was not relied on, either because the other party knew the truth, or because he relied wholly on his own investigation or because the alleged facts did not influence his action at all. And the burden of proof is on the person who has been proved guilty of material misrepresentation."

While we think that the conduct of defendant's agent when requested to read the deed was well calculated to mislead the plaintiffs and reasonably induce them to accept his positive assertion that the deed was drawn in accordance with the agreement, we note that recent decisions and text writers show a strong tendency to hold that the defense of negligence on the part of the plaintiff is not open to the defendant when sued for his positive fraud. Jaggard says: "The law recognizes, in many circumstances, the right of a man to rely upon the statements of another. * * * There is indeed a strong inclination on the part of courts to hold, without any qualification, that a person guilty of a fraudulent misrepresentation cannot escape the effects of his fault on the ground of the injured party's intelligence." 1 Torts, 595. The Supreme Court of Illinois, in *Linnington v. Strong,* 107 Ill., 295, says: "The doctrine is well settled that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence' as against his own deliberate fraud. Even when parties are dealing at arm's length, if one of them makes to another a positive statement, upon which the other acts (with the knowledge of the party making such statement) in confidence of its truth and such statement *is known*

*to be false* by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that when it appears that one party has been guilty of an intentional and deliberate fraud by which, to his knowledge, the other party has been misled or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct, by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care." *Kilmer v. Smith,* 77 N. Y., 226. "If a *bona fide* inquiry be made in a proper quarter and a reasonable answer be given, a man may rest satisfied with the information and need not make further inquiry." Kerr on Fraud and Mistake, 256; 1 Big. on Fraud, 528; Fetter's Eq., 136; Biddle on Warranty, section 326. The defendant has raised and discussed these questions upon a demurrer to the evidence and upon requests to instruct the jury. His Honor correctly overruled both motions. The instructions in regard to the essential facts to be found by the jury in answering the issues are in strict accordance with the principles which we find approved by this and other courts. The defendant requested the court to instruct the jury that the extent of its liability, if any, was the market value of the long leaf pines at the date of the deed. The word "market" was stricken out and the instruction given as asked, His Honor saying, that while the market value of the pine should be considered as evidence of their value, it should not control—the question was what was the real value of the long leaf pines as they were standing at the date of the deed. We do not perceive any error in this instruction. There was no evidence that there was any market

in which the value was fixed. The plaintiffs were entitled to the value of their property. His Honor instructed the jury that the burden was upon the plaintiffs to show the alleged fraud by testimony clear, cogent and convincing; that the rule in that respect was the same as in an action to correct the deed. In concluding the charge he said: "The burden of all these issues is on the plaintiffs and the jury cannot find any one in their favor unless upon the greater weight of the testimony." To this, defendant excepted. Without discussing the question whether, in an action of this character, the rule laid down by His Honor is applicable, we do not think that the last remark, considered in the light of the charge given in the beginning could have misled the jury. He had stated clearly and forcibly the rule most favorable to defendant, and nothing in the slightest degree weakening the force of his language had been said until the conclusion. His Honor certainly did not intend to reverse what he had said and we do not think his language could have been so understood by the jury. We have examined the entire record with care and find no error. In the light of the testimony as set forth, it is difficult to see how the jury could have come to any other conclusion. The judgment must be

Affirmed.