WHITE SEWING MACHINE COMPANY v. I. W. BULLOCK.

(Filed 4 December, 1912.)

1. **Contracts — Vendor and Vendee — Fraud—Misrepresentations— Principal and Agent—Evidence—Questions for Jury.**

   A representation made by the agent of a vendor in the sale of 150 sewing machines, that he would give the vendee certain exclusive territory ; that a certain agency therein was discontinued ; that no further sales would be made through it ; that the existing agency had on hand only three machines, when in fact a much greater number were on hand there, and at the time of the transaction an order had been accepted by the agent from such other agency of 100 machines to be sold in the territory promised the vendee, is not of a promissory character and upon conflicting evidence, and further evidence tending to show that the vendee would not otherwise have made the purchase, a question of fraud is raised to be determined by the jury, as to whether the representation was a false statement of existing facts, calculated to deceive, intended to deceive, and which did deceive the vendee and formed a material inducement for the contract of purchase.

2. **Same—Caveat Emptor.**

   When the agent of a vendor of sewing machines knowingly and fraudulently induces a contract of purchase upon the representation that the vendee was to have certain exclusive territory, and that a certain agency in a near-by town had been discontinued, which covered a part of the territory contracted for, etc., the vendee had a right to rely upon the truth of the assertion made

MACHINE CO. *v.* BULLOCK.

by the vendee's agent, and it was not required of him that he verify the statement before entering into the contract, and the doctrine of *caveat emptor* does not apply.

3. **Contracts—Vendor and Vendee—Fraud—Rescission—Notification —Rule of the Prudent Man.**

The defendant having contracted with the plaintiff for the purchase of a large number of sewing machines, induced by the fraudulent misrepresentations of the latter's agent as to exclusive territory, when the agent knew at the time it was largely occupied by another to whom he had sold like articles, it was for the jury to determine whether the defendant acted as an ordinarily prudent man would have done in not sooner notifying the plaintiff of his election to rescind the transaction, under evidence tending to show that he so notified the plaintiff when he discovered the fraud while working the territory contracted for, about eighteen days after he could probably have sold any of the machines.

4. **Contracts, Written—Parol Evidence—Fraud—Stipulations—Principal and Agent—Statute of Frauds.**

The principle that a written contract may not be contradicted or varied by parol evidence has no application when the writing itself is attacked for fraud; for if the contract is vitiated by fraud, its provisions are carried with it, and a clause in a contract of sale that it may not be varied by the representations of the sales agent cannot have any effect if the contract itself falls. Instances in which promissory representations may be false and vitiate a written contract, as where they include misrepresentations of existing facts, cited and discussed by WALKER, J.

5. **Contracts—Fraud—Rescission—Vendor and Vendee—Instructions —Evidence—Questions for Jury.**

When, as in this case, a contract for the sale of goods has been induced by fraud, the vendee has a right to rescind the contract and return the goods, and under the evidence, and under proper instructions from the court, the question was for the jury.

BROWN and ALLEN, JJ., dissenting.

APPEAL by defendant from *Whedbee, J.,* at July Term, 1912, of GRANVILLE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Hicks & Stem and T. T. Hicks for plaintiff.*
*B. S. Royster for defendant.*

WALKER, J. We are unable to agree with the argument of
plaintiff's counsel in this case. There is no essential disagree-
ment as to some of the principles of law·stated by them, but the
difference between us relates to their application to the facts of
this case. The issues made by the pleadings should, in our
opinion, have been submitted to the jury upon the question of
fraud. In order to a clear understanding of the matter, it will
be necessary to state the substance, at least, of the case.

The evidence is as follows: I. W. Bullock testified: "Mr.
Massey (agent of plaintiff) came to our store after dinner on
12 October, 1910, and said that he represented the White Sew-
ing Machine Company; that there was a large territory in this
(Granville) county that machines could be handled in; and I
asked him if Mr. Kittrell, of Oxford, had not been handling
these machines; he told me that he had been handling them, but
that he was not going to handle them any longer; that he was
not going to sell any more machines to Mr. Kittrell; that Kit-
trell had only two or three of the machines of his company on
hand. In consequence of this conversation, I signed the order,
which is as follows:" Then follows the order. It appears there-
from that defendant agreed to take 151 sewing machines at the
prices named. It was a "rush order." The order contains this
stipulation: "This order is given subject to the approval of
the White Sewing Machine Company, and if accepted or filled
in full or in part, to be settled for at the prices and terms above
set forth. It is understood that no claim of any understanding
or agreement of any nature whatsoever between this company
and its dealers will be recognized except such as is embraced in
written orders or is in writing and accepted by said company
in writing from its home office at Cleveland, Ohio." Bullock
& Co.'s store was at Creedmoor, where the order was given, and
the order was signed at the time of the representations as to
Kittrell's agency. I. W. Bullock further testified: "I relied
upon the statement made to me by Mr. Massey. I signed the
order in consequence of such statements. I afterwards found
out that Mr. Kittrell was selling the same machine in Creed-
moor. I stopped my men from selling the machine and notified
the company that the machines were subject to their order. I
wrote the following letter, dated 11 November, 1910:

"THE WHITE SEWING MACHINE COMPANY,
                              "*Cleveland, Ohio.*

"GENTLEMEN:—Mr. Massey has just left here. I wrote for him to come and see about placing two cars of machines in same territory. Mr. Kittrell, of Oxford, has been handling your machines in this territory for some time. When Mr. Massey came to see about selling these machines, the first thing I asked him was about Mr. Kittrell selling this machine, and he told me that Mr. Kittrell had a few machines on hand, but would not sell any more. After he told me that Mr. Kittrell was not going to handle the White any more, and making other promises about selling these machines in a short while, I gave him the order for the car of machines, with the understanding that we were not to have any other opposition. Now we are not going to offer another one of these machines for sale. Mr. Massey made a false statement to sell these machines, and we do not propose to do any such business. The machines are here subject to your order. Mr. Massey also said that the freight would not be but 77½ cents on the machine, and when they came the freight was over $1. We paid the freight and thought we would fix this with Mr. Massey, but when he came, he said that I would have to take the matter up with you. Please advise what disposition you wish made of these machines.
                              "I. W. BULLOCK & CO.

"I received the following letter, dated 15 November, 1910, from the plaintiff, and marked Exhibit B:

"MESSRS. I. W. BULLOCK & CO.,
                    "*Creedmoor, N. C.*

"GENTLEMEN:—We have your esteemed favor of the 11th, which is carefully read, and in simple fairness to the situation, we state that since our relations with your company were negotiated, we have made no shipments to Mr. Kittrell, of Oxford, which, it seems to us, should meet and satisfy your contentions in this respect. You were aware that we had formerly dealt with Mr. Kittrell.

"Your statement that Mr. N. L. Massey had made certain promises is of a character that we must necessarily place the

same before him, and we are obliged to say that accepting your written and signed order, the terms of which are plainly specified, we cannot accept your suggestion that your machines are now subject to our order.

"What Mr. Massey said to you about the freight is the published rate of the transportation company, and we think admits of no correction, as the rate is 77½ cents per hundred pounds, and if you paid freight at a higher rate, refund can be obtained.

"We are not aware of any conditions attached to your order except as were embraced in the order itself, a copy of which is no doubt in your possession. In advising Mr. Massey of your present word, he will no doubt make it a point to see you at an early date, but in the absence of being able to do this, will write you at once.          Yours truly,

"WHITE SEWING MACHINE COMPANY."

The machines arrived at Creedmoor on 22 October, 1910, and Bullock & Co. paid the freight, 26 October, 1910, amounting to $150.48. In deference to the suggestion of the court, the witness was not cross-examined.

A. J. Kittrell testified: "I know Mr. N. L. Massey; I purchased of him, the latter part of September, 1910, I think 28 September, a car-load of White sewing machines. I first bought 40 and then bought 60 machines. I received them in October, 1910. The only contract I had was a verbal one with Mr. Massey, and he agreed that I was to have Granville County, and he would reserve Person County for me. Mr. Massey came to Oxford in a few days after I received the machines, which I bought of him in September; he came to adjust the freight rate. On 12 October, 1910, I had on hand 106 White sewing machines. I was selling them in Granville County, and no notice was ever given me that my agency was to terminate." In deference to a suggestion of the judge, this witness was not cross-examined.

At the close of defendant's case, the court held that there was not sufficient evidence to go to the jury on the first issue offered by the defendants, and his Honor then declined to submit any of the issues tendered by them. The jury returned a verdict in favor of the plaintiff for $3,900 and interest from 24 April,

1911, under the instructions of the court. Exceptions were duly taken to the several rulings of the court.

It is said that the representations were promissory. ·Not at all, as we view them. Bullock & Co. were told by the plaintiff's agent that they would not be brought into competition with Kittrell, and for the reason, as he represented to them, that Kittrell was no longer the agent of plaintiffs for the sale of their sewing machines, and that he had only two or three machines on hand. This was no promise that he should not compete with him, but the false statement of existing facts, calculated to deceive, intended to deceive, and which did deceive the defendants, as the jury might well have found upon the evidence, if it had been submitted to them. It is evident that defendants would not have bought if Kittrell would continue to sell, and in order to relieve their apprehension on that score, the agent falsely stated, if we are to believe Bullock and Kittrell, the following as the subsisting facts: That Kittrell had only two or three machines, when he had six, and had ordered from plaintiffs 100 more in the latter days of September, which arrived in Oxford at the very time the agent was making his false representations in Creedmoor. Can it be said that a statement that Kittrell had only three machines was not false, when the agent knew that he had taken an order from him for 100, delivered at the time he sold the machines to defendants? And if it was false, it surely was not promissory. If it was not a false affirmation, as I think it clearly was, it was, at the least, the suggestion of a falsehood, or the suppression of the truth, which in law would be the same thing. But he told defendants they would have no competition with Kittrell, when he knew, at the time, as Kittrell testified, that plaintiffs had made a contract with Kittrell,· through him as their agent, to the effect that Kittrell should have the exclusive agency for Granville County, and he was told that they would also reserve· the adjoining county of Person for him, which would, of course, bring the defendants in direct competition with Kittrell. They not only had given Kittrell the agency for Granville, with a promise of Person, but had supplied him with 100 machines to start with. Upon far less evidence than this we have sent cases of this kind to the

jury. Were the representations calculated to deceive? Why did
the defendant inquire about Kittrell at all, if he was not seek-
ing information upon which he expected to base his decision as
to the purchase? And the agent knew that the inquiry was for
that purpose, or it is a clear inference from the testimony,
which the jury could have drawn. In response to it, he said
that Kittrell had been handling their machines, but would not
handle them any longer; that he was not going to sell any more
machines to him and he then had only two or three, when he
must have known this to be false, as he had just sold him 100.
The knowledge of this fact he manifestly intended to withhold
from defendants, in order to secure the contract. That all this
induced defendants to buy must be taken as true, as Bullock
expressly testified that it did, and we are dealing with some-
thing equivalent to a nonsuit, *i. e.*, a charge that defendants
could not, upon the evidence, have the contract rescinded, nor
could they recover damages for the fraud alleged to have been
practiced upon them. All the evidence must be taken as true.
*Deppe v. R. R.,* 152 N. C., 79, and cases cited. "Where a ven-
dor in a sale or exchange of real or personal property makes
false representations as to material facts relating to the prop-
erty, having at the time knowledge that his statements are false,
or what the law regards as equivalent to such knowledge, and
intending that the purchaser shall rely upon them as an induce-
ment to the purchase, he becomes liable to an action of deceit
in case the purchaser, acting in reliance upon the representa-
tions, consummates the purchase and suffers loss thereby." 20
Cyc., 45. The false representation is material, as is held in
*Fishblate v. Fidelity Co.,* 140 N. C., 593, if the fact untruly
asserted or wrongfully suppressed, if it had been known to the
party, would have influenced his judgment or decision in mak-
ing the contract at all. "Fraud is material to a contract when
the latter would not have been made if the fraud had not been
committed." *McAleer v. Horsey,* 35 Md., 439. "To sustain an
action for deceit for a false and fraudulent representation as to
the value of property, whereby the plaintiff was induced to pur-
chase the same, it is not necessary that the plaintiff should have
relied solely on the representation made; it is enough that it

had a material influence in inducing him to purchase." *Handy v. Waldron,* 19 R. I., 618, and in the last cited case it was also held that whether the buyer is chargeable with negligence or laches in not making inquiry, although he had opportunity to do so, was a question for the jury.

But it is argued that it was the duty of Bullock to investigate—that is, to doubt the agent's veracity and ascertain the facts for himself. In the first place, the contract was signed immediately after the representation was made, and he had no time to do so. Besides, the agent had knowledge of the fact; the very nature of the transaction shows it, as he had sold the machines to Kittrell. The defendant innocently relied on his integrity. We have said in several cases that a man is not expected to deal with another as if he is a knave, and certainly not unless there is something to excite his suspicion. Defendant had the right to suppose that the statement was true, as the agent had knowledge of the fact, and he did not. "If the fact represented is one which is susceptible of accurate knowledge, and the speaker is or may well be presumed to be cognizant thereof, while the other party is ignorant, and the statement is a positive assertion containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied on. And if in such a case plaintiff has been defrauded through acting in reliance on defendant's false statements, defendant will not be heard to say that he is a person unworthy of belief and that plaintiff ought not to have trusted him, or that plaintiff was negligent and was cheated through his own credulity." 20 Cyc., 33, 34. It is said in *Foley v. Haltry,* 43 Neb., 133, that "A person is justified in relying on a representation made to him where it is a positive statement of fact, and where an investigation would be required to discover the truth." The statement in our case was that Kittrell had only three machines, when the agent knew that he had 106; and further, that he would no longer handle their machines, when he held the unrevoked agency for Granville County.

We find this in *Cottrell v. Krum,* 100 Mo., 399 : "It is no excuse for, nor does it lie in the mouth of, the defendant to aver that plaintiff might have discovered the wrong and prevented its accomplishment had he exercised watchfulness, because this is but equivalent to saying, 'You trusted me; therefore, I had the right to betray you.' The same idea is expressed in another opinion thus : 'We doubt if it is equity to allow a sharper to insist on the fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries,' " citing *Pomeroy v. Benton,* 57 Mo., 531; *Wannell v. Kem,* 57 Mo., 478. No man can complain that another has relied too implicitly on the truth of what he himself stated (Kerr on Fraud, p. 81), for it is not just that a man who has intentionally deceived another should be permitted to say to him, "You ought not to have trusted me, and you were yourself guilty of negligence," when he had special knowledge of the facts, of which he knew the other to be ignorant. Bigelow on Fraud, p. 523 *et seq.* "We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud, on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehood." *Hale v. Philbrick,* 42 Iowa, 81. "The very representations relied upon may have caused the party to desist from inquiry and neglect his means of information; and it does not rest with him who made them to say that their falsity might have been ascertained, and it was wrong to credit them. To this principle many authorities might be cited." *Graham v. Thompson,* 55 Ark., 299. "A person cannot procure a contract in his favor by fraud, and then bar a defense to a suit on it on the ground that had not the other party been so ignorant or negligent he could not have succeeded in deceiving him." *Warder v. Whitich,* 77 Wis., 430. "However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has too implicitly relied on the truth of things he has himself stated." *Reynell v. Sprye,* 1 De Gex, M. and G., 549. These cases are approved in *Strand v. Griffith,* 97 Fed. Rep., 854, which is a very instructive one.

But a case very much in point is *Eaton v. Winnie*, 20 Mich., 156, and there it is said: "Where one assumes to have knowledge of a subject of which another may be ignorant, and knowingly makes false statements regarding it, upon which the other relies, to his injury, the party who makes such statements will not be heard to say that the person who took his word and relied upon it was guilty of such negligence as to be precluded from recovering compensation for injuries which were inflicted on him under cover of the falsehood." But the law is settled in this State by *Griffin v. Lumber Co.,* 140 N. C., 514, where it is held, approving what is said in Pollock on Torts, 293: "It seems plausible, at first sight, to contend that a man who does not use obvious means of verifying the representations made to him does not deserve to be compensated for any loss he may incur by relying on them without inquiry. But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant; and it is now settled law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied on them. He must show that his representation was not in fact relied upon. . . . In short, nothing will excuse a culpable misrepresentation short of proof that it was not relied on, either because the other party knew the truth or because he relied wholly on his own investigation or because the alleged facts did not influence his action at all. And the burden of proof is on the person who has been proved guilty of material misrepresentation." And in *Hill v. Brewer,* 76 N. C., 124, *Justice Bynum* said that "The maxim of *caveat emptor* does not apply in cases where there is actual fraud."

The agent told defendant, it is true, that Kittrell had been selling plaintiff's machines; but the fraud consisted in the further statement that he had ceased doing so. It does not lie in the mouth of the plaintiffs, nor is it becoming or seemly in them, to say that defendants should have immediately suspected their agent of being a dishonest man and made inquiry to verify his statement before signing the contract, even if there had been time and opportunity to do so. Whether Bullock & Co. exercised due diligence, if required to investigate under the cir-

cumstances of this case, was a question for the jury. 20 Cyc.,
pp. 50, 51. The principle relied on by the plaintiff, that if
the means of knowledge be at hand and equally available to
both parties, and there be no fiduciary relation and no war-
ranty of the truth of the statement, the party complaining must
show that he has made due inquiry, is subject to much qualifi-
cation, as will be seen by reference to 20 Cyc., pp. 32, 33, and
does not apply where there is actual intentional fraud or mis-
leading statements, which are calculated to prevent or stifle in-
quiry and made under such circumstances as those in this case,
where they were of a nature to allay suspicion. The authori-
ties cited by the plaintiff were based upon a state of facts en-
tirely different from those in this case, and such are the cases
of *Slaughter v. Gerson,* 13 Wall., 379, and *Champion v. Woods,*
79 Cal., 17.

There was nothing in this transaction to put a man of ordi-
nary prudence upon inquiry. Bullock knew that the agent was
cognizant of the facts, and relied upon his positive and unequiv-
ocal statements. There was absolutely nothing to arouse his
suspicion or to induce him to believe that he was not an honest
man and would not tell the truth.

It is further said that the defendant should have acted
promptly in discovering the fraud and repudiating the con-
tract. He did so, as we think the evidence conclusively shows.
It must be remembered that the contract upon which this action
was brought was signed by defendants at the very time of the
false representations. So there was no opportunity then to in-
vestigate, if it was required by the law, which we have shown
is not the case. The machines were received on 22 October,
and defendants could not have ascertained the truth until, by
selling them, he came into actual competition with Kittrell;
and, regardless of this fact, he complained to plaintiff of the
fraud on 11 November, just eighteen days after he could possi-
bly have sold any of the machines. No court, we think, has
ever imputed laches under such circumstances, certainly not as
matter of law. On the contrary, defendants acted with unusual
promptness, and offered to return the goods. But the question
whether they acted as an ordinarily prudent man would have

done was to be decided by the jury, as we have seen. There is no evidence as to how many machines they had sold before they notified plaintiffs of the fraud, but they could have been selling, if they sold at all, only a few days. As they offered to return all the machines, it would seem that they had not sold any of them, and had merely made preparations to sell. But we repeat, all this was for the jury. When the plaintiffs were notified of the facts, they repeated the imposition and the fraud by stating that they had made no shipments to Kittrell since their agent's false representations were made, which, perhaps, was literally or nominally true, but it was an evasion of the truth, as they had a few days before sold 100 machines to him, which, of course, would make him a competitor of defendants, and besides, had given him the agency for Granville County. They thought that their agent's representations were of a very serious character, as they said so, and promised "to place the same before him" at once. After learning of the fraud, they seek to entrench themselves behind the clause in the contract exempting them from liability for any representations of their agents at variance with the contract, which, of course, does not protect them, for if the contract is void by reason of the fraud, this clause falls with it. *Machine v. Feezer,* 152 N. C., 516; *Garrison v. Machine Co.,* 159 N. C., 285.

We said in *Garrison v. Machine Co.,* 159 N. C., 285, that the clause of the contract excluding parol evidence of declarations made by the agent of defendant in that case did not apply, nor did the rule of law forbidding the terms of a written contract to be contradicted or varied by oral proof. "This is not an action for the breach of a written contract; but the theory upon which it rests is that the instrument was never delivered, and this is the principal question in the case. If the contract had been executed, or the writing delivered to the agents, with the understanding that it should presently take effect, the plaintiff could not by parol evidence contradict or vary its terms (the execution and validity of the contract not being questioned). *Moffitt v. Maness,* 102 N. C., 457. But this is not what was proposed to be done; but, on the contrary, the purpose was to show that the contract never had any existence in fact. The

case is governed in all its features by *Pratt v. Chaffin,* 136 N. C., 350, and *Bowser v. Tarry,* 156 N. C., 35." The clause of exemption is only operative when the contract is a valid one. *Machine Co. v. McClamrock,* 152 N. C., 405; *Medicine Co. v. Mizell,* 148 N. C., 384; *Unitype Co. v. Ashcraft,* 155 N. C., 63.

This transaction was not mere dealer's talk or the puffing of his wares, nor were the representations promissory. The agent stated facts as subsisting, viz., that defendant would not come into competition with Kittrell, who had only three machines. If the evidence is to be credited, this was false and was intended to deceive in order to secure the contract. But even promissory representations may be false and fraudulent, and if so, they invalidate the contract, and as much so if they had been simply and technically representations of existing facts. "As a general rule, false representations upon which fraud may be predicated must be of existing facts, or facts which previously existed, and cannot consist of mere promises or conjectures as to future acts or events, although such promises are subsequently broken, unless the promise includes a misrepresentation of existing facts, or the statement is as to some matter peculiarly within the speaker's knowledge, and he makes the statement as a fact." 20 Cyc., p. 20. Again: "As a general rule, if a vendor of property, in order to induce a sale, makes positive assertions as to any material fact which is peculiarly within his own knowledge, and of which the purchaser is ignorant, they may be relied on by the purchaser without further investigation; and if the statements are false and fraudulent and cause damage to the purchaser, he may hold the vendor liable in damages. Nor need the fact be one exclusively within the vendor's knowledge. Upon this principle positive misrepresentations by a vendor of territorial rights under patents, as to the merits and value of the patents and of the rights to be sold, are held not to fall within the rule of *caveat emptor.*" 20 Cyc., pp. 55, 56, and note 43. This sounds very much like the words uttered by the agent and set out in this case, and has the true ring of a very just and preëminently honest principle of morals, and of law, which should be founded on morality. And

MACHINE CO. *v.* BULLOCK.

again: "Although the purchaser may have available means of ascertaining the truth, yet if the vendor by any misrepresentation or by any trick or artifice induces him to forbear inquiry or investigation which he would otherwise make, and thus to rely solely on the vendor's false statement, the rule of *caveat emptor* does not apply, and the purchaser may hold the vendor liable. And since such practices are obviously calculated only to mislead the purchaser by producing an erroneous impression on his mind and thus lulling him into a false security, they may of themselves well be deemed to amount to actionable fraud where they succeed in producing the desired result." 20 Cyc., 61, 62. This also seems to bear a very close likeness to the facts of our case, and to have adjusted a fair and wholesome.legal principle to them.

If the contract was induced by fraud, defendants had the right to rescind it and return the goods, which they did. *Food Co. v. Elliott,* 151 N. C., 393; *Machine Co. v. Feezer,* 152 N. C., 516; *Fields v. Brown,* 160 N. C., 295.

The case of *Unitype Co. v. Ashcraft, supra,* discusses several of the questions involved in this case, and is an authority in support of our conclusion.

The result is that the issues in the case should be submitted to the jury, with proper instructions upon the law, and it was error not to have done so and to have entered a verdict and judgment for the plaintiff. The case has been considered by us upon the assumption that the jury would have believed the witnesses, Bullock and Kittrell. It may be that the plaintiff could have overcome their testimony, if the case had been referred to a jury. There must be another trial of the case, because of the error in the ruling of the court, as indicated above.

New trial.

BROWN, J., dissenting: The defendant admits the contract sued upon and the amount of the indebtedness, but alleges that the execution of the contract was procured by the fraudulent and false representations of the plaintiff's agent, Massey. His Honor held that there was no sufficient evidence to support the

defendant's plea. In this ruling I concur, as I am of opinion that the evidence of fraud is entirely too shadowy.

The defendant Bullock testified that the agent, Massey, said that there was a large territory in this and the adjoining counties that machines could be handled in; that he asked Massey if Kittrell of Oxford had not been handling these machines. Massey said that Kittrell had been handling them, but he was not going to handle them any longer; and that he did not intend to sell any more machines to Kittrell; that Kittrell had only two or three machines on hand.

The witness testified that in consequence of this conversation, he signed the order for the machines and that they were shipped to him from Cleveland; that he put his men to selling them, and finding out that Kittrell was selling the same machine, he stopped his men and notified the plaintiff that the machines were subject to their order.

The only real misstatement that I can see is in reference to the number of machines Kittrell had on hand. Massey stated he had two or three. It turned out afterwards that Kittrell had on hand fifty or sixty. There is nothing to show that Massey made an intentional false statement.

The agency of Kittrell was not continued, as the correspondence shows, and the fact that Kittrell had more machines than had been stated by plaintiff was scarcely a determining factor in the defendant's decision. In so large a territory fifty additional machines would make but little difference.

It is in evidence that Creedmoor, where the plaintiffs did business, is only 18 miles from Oxford, where Kittrell was established, and that the two places were connected by daily mail, telephone, and telegraph.

I am of opinion that the representations relied upon to establish fraud do not come up to the general definition of a misrepresentation of a subsisting fact. *Hill v. Gettys,* 135 N. C., 375. They appear to me to be "promissory representations," looking to the future, and to be entirely void of any fraudulent purpose.

The circumstances surrounding the parties were such that the plaintiffs had every opportunity to make inquiry at any mo-

ment of Kittrell, as to his future intentions in regard to hand-ling the machines, as well as to the number which he had on hand.

It is a general principle that if the means of knowledge be at hand and equally available to both parties, and the subject-matter be open to inquiry of both alike, and there be no fidu-ciary relation, and no warranty of the facts, the party com-plaining must show that he has availed himself of the existing means of information at the time of the transaction. *Green-leaf v. Gerald,* 94 Me., 91. If the circumstances attending the transaction are such as would put a reasonable person on in-quiry, the law will not presume deceit. *Champion v. Woods,* 79 Cal., 17.

As is said by *Mr. Justice Field* in *Slaughter v. Gerson,* 13 Wallace, 379 :

"Where the means of knowledge are at hand and equally available to both parties, if the purchaser does not avail him-self of these means, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them where no con-cealment is made or attempted, he will not be entitled to favor-able consideration when he complains that he has suffered from his own voluntary blindness and been misled by overconfidence in the statements of another. The reason for this doctrine is based upon the ground that public policy requires people to exercise at least ordinary prudence in their business dealings instead of calling on the courts to relieve them from the conse-quences of their inattention and negligence."

To rescind the contract for fraud in procuring it, this Court has said that the injured party must act promptly and within reasonable time after he should have discovered the fraud by due diligence, and he is not allowed to rescind in part and affirm in part. *May v. Loomis,* 140 N. C., 352.

The vendee is not permitted to be culpably negligent in cases where he ought to have informed himself of the facts, and to fall back upon an alleged reliance upon the vendor's representa-tions. *Ramsey v. Wallace,* 100 N. C., 82; 14 A. and E., 117.

In addition to the fact that the representations in this case are largely of a promissory character (*Cash Register v. Townsend*, 137 N. C., 655), it appears to be undisputed that the plaintiff had every opportunity to make inquiry of Kittrell, and that he delayed a most unreasonable time. He signed the order, sent it to Cleveland, O., received the machines after they were shipped to him, put his men on the road to sell them, and sold a number of them without making any inquiry whatever of Kittrell.

As he had every opportunity to inform himself in advance, without any sort of inconvenience or delay, it was the defendant's negligence that he failed to do so.

MR. JUSTICE ALLEN concurs in this opinion.