## Weber v. The Colonial Trust Company et al.

*Gifts—Gifts of corporate stock to officers by controlling stockholders in consideration of past fidelity and service to the corporation—Cancellation for fraud and misconduct—Parties—Supreme Court Equity Rule 16.*

1. Where two stockholders who own and control all the capital stock of a corporation create a trust for the benefit of one of its officers, his wife and daughter, in consideration of past faithful services, a bill in equity may be maintained by them for the cancellation of the deed of trust and the recovery of the stock upon discovering that, at the time the trust was created, he had been guilty of misappropriating funds of the corporation.

2. All who joined in making the gift are necessary parties to the bill. Supreme Court Equity Rule 16 does not authorize one person to sue on behalf of himself and others, unless the parties are too numerous to be included; hence, both stockholders are necessary parties, unless the one omitted files of record a disclaimer of all interest.

3. The executor of the deceased officer, for whose services the trust was created, is a proper party defendant if the deceased officer's estate may have an interest in the stock.

4. That the settlors, by due diligence, ought to have discovered the officer's misconduct before executing the deed of settlement is no answer to the bill; it does not lie in the mouth of the officer or his executor to complain of the confidence reposed in him by them.

5. That the deceased officer's misconduct resulted in direct and immediate loss to the corporation and not to the settlors is immaterial, since they owned all its stock.

6. The fact that the deceased officer's wife and daughter were beneficiaries under the declaration of trust is no obstacle to setting aside the gift, since they are mere volunteers under him and have no independent standing of their own.

Preliminary objections to bill. C. P. No. 1, Phila. Co., Dec. T., 1924, No. 9497, in Equity.

*W. B. Saul,* for plaintiff; *W. C. Mason,* for defendants.

TAULANE, J., Oct. 1, 1925.—This matter comes before the court on the defendants' preliminary objections to the plaintiff's bill. The bill seeks to set aside a gift of certain shares of the stock of a corporation on the ground of fraud. The defendants contend that the bill is defective for want of proper parties and absence of any ground of equitable relief.

In disposing of the defendants' objections, we must take the facts alleged in the bill to be true. These facts are in substance as follows:

William E. Weber and Henry J. Weber owned and controlled all the capital stock of Charles Eneu Johnson Company. Charles F. Bower was vice-president, a director and general manager of the corporation, having had for a number of years the absolute control of the affairs and policies of the corporation, and at the same time acted as the confidential adviser of William E. Weber and Henry J. Weber.

From time to time Bower represented to the Webers that he was acting solely in their interests; that he had contributed to their comfort and added to their material possessions, and suggested to the Webers that they should, in recognition of his services, give him 1000 shares of the stock of the corporation, to be placed in trust for himself, his wife and daughter.

Believing these statements to be true, William E. Weber, on behalf of himself and Henry J. Weber, delivered to the Colonial Trust Company 1000 shares of the corporation, accompanied with a writing dated Feb. 13, 1924, which stated that the shares were to be held by the Colonial Trust Company in trust for Bower, his wife and daughter, upon such terms as should be declared by Bower.

Weber v. The Colonial Trust Company et al.

The recitals of the writing of Feb. 13, 1924, declare the reason for the gift as follows:

"Whereas, Charles F. Bower, during the period of his association with me and my brother, has relieved us of many responsibilities, and by his conduct and endeavors has added greatly to our comfort, pleasure and material things;

"And, whereas, on behalf of myself and my brother, and in appreciation of the association and service, I desire to give to him, as a token of our regard and affection, the stock hereinafter mentioned."

Pursuant to the provisions of the writing of Feb. 13, 1924, a declaration of trust was executed by Bower, which was approved in writing by William E. Weber. The Colonial Trust Company agreed in writing to hold the shares upon the terms set forth in Bower's declaration of trust.

The declaration of trust recited the writing of Feb. 13, 1924, and directed the income to be paid to Bower for life, at his death to his wife for life, at her death to his daughter for life, and upon his daughter's death the principal to be paid to her children, and in a contingency, to Bower's estate.

Bower died on April 20, 1924, and James B. Lichtenberger is the executor of his will.

Shortly after Bower's death it was discovered he had been unfaithful to the Webers, and, as an executive and general manager of the corporation, he had been misappropriating its funds and property.

While many fraudulent transactions are set forth, it is sufficient at this time to refer only to the seventh paragraph of the bill, where it is alleged: "Your orator specifically avers that during the period, April, 1921, to December, 1923, unknown to your orator, the said Charles F. Bower was diverting to his own use from Charles Eneu Johnson & Company large sums of money, which sums of money were received by him for his own use in the following manner: Merchandise invoices were made out by one James S. Gilroy for goods alleged to be delivered to Charles Eneu Johnson & Company, payment for said invoices was made by Charles Eneu Johnson & Company by direction of said Charles F. Bower, by check drawn to the order of said James S. Gilroy; that an examination of the records of Charles Eneu Johnson & Company indicates that no merchandise was ever received on these invoices, and a further investigation has disclosed that the said James S. Gilroy was, and is in fact, one Arthur Bower, a brother of the said Charles F. Bower, and the said Arthur Bower admits that the invoices which were prepared on the invoice heads of James S. Gilroy were prepared under the authorization of, and by direction of, the said Charles F. Bower, deceased, and that the goods represented by said invoices were not delivered at any time to Charles Eneu Johnson & Co., and said Arthur Bower further admits that the checks which he received in the name of James S. Gilroy from Charles Eneu Johnson & Company were cashed by him and the proceeds thereof handed by him to the said Charles F. Bower, deceased. And your orator further avers that the sums of money so diverted by Charles F. Bower to his own use are in excess of $73,000."

The bill is rather loosely and inartistically drawn and merits much of the defendants' criticism, yet most of the defects pointed out are technical, of form rather than substance, and are not of sufficient moment to warrant us in dismissing the bill. Two points of substance were discussed at bar.

### First. Is there a want of proper parties?

The defendants contend that (a) Henry J. Weber should be a party plaintiff, and (b) that the executor of the will of Bower should not be a party defendant.

It is uncertain from the bill whether Henry J. Weber had any interest in the stock given to Bower. If he had an interest, he must be a party. There is no justification under the Equity Rules or Equity Practice for one person to sue on behalf of himself and others, unless the parties are too numerous to be included. (Equity Rule 16.)

Henry J. Weber should be made a party, unless he files of record a disclaimer of all interest.

We have no doubt that James B. Lichtenberger, executor of the will of Bower, is a proper party defendant, because, in a contingency provided for in Bower's declaration of trust, his estate might have an interest in the stock.

### Second. Does the bill show ground for equitable relief?

If Bower represented he had been faithful as the executive officer of the corporation, while in fact he was an embezzler, and the Webers, upon the faith of and belief in this representation, gave Bower the stock, it seems too clear for serious argument that the stock was obtained through fraud.

Even in the absence of any express statement or representation by Bower, he could not retain the stock if he knew the Webers believed he was an honest official, and in this belief gave him the stock, if he at the time was an embezzler.

The parties were not dealing at arm's length (Harris v. Tyson, 24 Pa. 347); their relation was one of trust and confidence, with the duty of disclosure on the part of Bower. Concealment under such circumstances is a fraud (Kerr on Fraud, 5th ed., 111).

The recitals of the writing of Feb. 13, 1924, were express notice to Bower that the Webers believed he had earned the gift by faithful and honest service.

It is no answer to say that the Webers should have discovered Bower's misconduct; it does not lie in Bower to complain of the confidence Webers reposed in him.

Mr. Justice Williams in Sutton v. Morgan, 158 Pa. 204, 218, says: "The doctrine of contributory negligence cannot be invoked by the defendants to save them from liability for misleading their victim. They must stand or fall on the truth."

The court in White Machine Co. v. Bullock, 161 N. C. 1, very forcibly states our views as follows: "We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud on the ground that his victim had faith in his word, and for that reason did not pursue inquiries which should have disclosed the falsehood."

Neither is it any answer to say that Bower's misconduct resulted in loss to the corporation and not to the Webers. The Webers owned all the stock of the corporation; it was in the belief that Bower was making their stock more valuable that the gift was made. Surely, any loss or injury to the corporation would be immediately reflected in the stock owned by the Webers.

Our views of the law find illustration in several well considered cases.

In Jones v. Stearns, 122 Atl. Repr. (Vt.) 116, a woman falsely represented to the plaintiffs that she was without sufficient means for her support and was unable to pay therefor, and that, unless the plaintiffs would take her into their home and there support her without charge she had no place where she could go, and that she could not live where she had to pay board, because she had nothing to pay with. Believing these statements, the plaintiffs took her into their home and kept her without charge. These representations were false, as the woman had ample means for her support. Her fraud was not discovered until after her death. It was held the plaintiffs were entitled to

recover for her board. The court said: "We think that the complaint clearly states a case of actionable fraud on the part of Rosepha. This conclusion is sustained by Eggers *v.* Anderson, 63 N. J. Eq. 264, 49 Atl. Repr. 578, 55 L. R. A. 570. There the complainants were induced to support the deceased several years by her fraudulent pretence that she was destitute, when in fact she had a considerable amount of money in the bank, and it was held that they were entitled to be recompensed out of her estate for the money and property so furnished her. See, also, Edwards *v.* Owens, 15 Ohio, 500, where it was held that one who, by false representations that he is insolvent, induces his creditor to discharge a note on payment of less than its value commits an actionable fraud."

In Evans *v.* Evans, 118 Ga. 890, a husband, who was ignorant of his wife's adultery and intended elopement with her paramour, made her a gift of property. The gift was made as a result of repeated requests of the wife. The gift was set aside for fraud. The court said:

"There was evidence from which he could have found that, without the husband's knowledge, illicit relations between the wife and Thrash had begun prior to the time the money was deposited in her name and before the husband bought the property and instructed the grantors to make the deeds directly to her; and, also, that she contemplated a renewal of the intercourse with Thrash. There seems to be no doubt that a gift made under such circumstances will be revoked at the instance of the husband on discovery of the wife's criminal conduct. In Evans *v.* Carrington, 2 De Gex, F. & G. (63 Eng. Ch.) 481, where there was a deed of separation, Lord Campbell held that, while non-disclosure of antenuptial incontinence of the wife was not such a fraud on the husband as to entitle him to set aside a settlement made at the time of the marriage (compare Civil Code, 2425, par. 5), yet it would seem that adultery after the marriage and before separation would void the separation deed; and, likewise, if the wife induced her husband to execute a conveyance in contemplation of her renewal of the illicit intercourse, this would also invalidate the deed of separation.

"That the adultery of the wife, unknown to the husband, would vitiate a subsequent gift seems also to be recognized in Lister *v.* Lister, 35 N. J. Eq. 47; Chew *v.* Chew, 38 Iowa, 405.

"While the wife could hardly be expected to disclose her criminal intimacy with Thrash, yet it is certain that the husband would not have made the gift had he known of the illicit relations. And for her to induce her husband to convey the property to her after she had been guilty of adultery, or in contemplation of subsequent adultery with Thrash, was such a fraud upon the husband as to entitle him to revocation of the gift on discovery of her conduct." See, also, 29 Amer. Law Reps. Ann. 210.

As disclosed by the bill, the gift of the stock was procured by Bower's fraud.

The fact that Bower's wife and daughter are beneficiaries under Bower's declaration of trust is no obstacle to setting aside the gift. They are not innocent holders for value; they take as volunteers under Bower. The declaration of trust recites the writing of Feb. 13, 1924, which, in plain language, declares the reason for the gift.

Our conclusions are based on the allegations of the bill, which we must at this time accept as true. The defendants have not been heard, and they may have a complete answer to the bill.

And now, to wit, Oct. 1, 1925, the defendants' preliminary objections to the bill are overruled, except the one as to parties.

The plaintiff shall, within ten days, either make Henry J. Weber a party or file of record within that time his disclaimer of all interest, and in default thereof, the bill will be dismissed.

The defendants have leave to answer the bill within thirty days from the plaintiff's amendment of the record as to parties.