The School Com. of Providence Township *v.* Kesler and others.

THE SCHOOL COMMITTEE OF PROVIDENCE TOWNSHIP *vs.*
TOBIAS KESLER and others.

According to the Constitution and the legislation in reference to Common Schools, the school committees of townships are the successors of the school committees of the districts under the former system, and are entitled to all the property, and subject to all the liabilities of their predecessors.

A clause in a deed " as long as the system of Common Schools shall be continued at that place, or as long as it shall not be applied to any other purpose except for schools, of any kind," is not expressed in apt and proper terms to create a condition, or qualification of the estate conveyed, or even a covenant to run with the land.

A base or qualified fee has never been in use or in force in this State, or recognized by its laws; and a condition or qualification in a deed, conveying an estate to a school committee " as long as the system of common schools shall be continued, &c.," is contrary to public policy, repugnant, and inconsistent with the nature of the grant, and therefore void.

If a grantee, although an illiterate man, executes a deed without demanding that it be read, or elects to waive a demand for the reading, the deed will take effect.

[*Carson* v. *Commissioners of Cleaveland,* 64 N. C. 566; *Blount* v. *Harvey,* 6 Jones 186; *Norfleet* v. *Cromwell,* 64 N. C. 1, cited and approved.]

Civil action, tried before *Cloud, J.,* at Spring Term, 1872, of Rowan Superior Court.

The action was brought to recover damages to a school house.

Plaintiff exhibited a deed from the defendant Kesler to the school committee of District 38, in Rowan county, dated Nov. 27th, 1848. This evidence was objected to, but received by the Court. This deed was made to Samuel Peeler and others, whose names are set out in the deed, School Committee of the 38th district of common schools and their " successors in office &c;" and the *habendum* clause is, " To have and to hold &c., as long as the system of common schools shall be con-

tinued at that place, or as long as it shall not be applied to any other purpose except *for schools of any kind*"

Plaintiff proved that the deed embraced the *locus in quo*, and that it was within the limits of Providence township. The alleged trespass by the defendants was also proved.

Defendants introduced Tobias Kesler, the maker of the deed. He stated that he was an illiterate man, and at the time he signed the deed he could not read one-fourth of it, and he did not see any interlineation, " or schools of any kind." That he requested Peeler, who brought the deed, to read it. Peeler said, he could not read it, but had heard it read, and it carried out the contract with the School Committee. Witness then signed. He was allowed to state what the contract was, independent of the deed, though objection was made by the plaintiff. It was, that the land to be conveyed was to be used for school purposes, as long as the present system of common schools should continue. Plaintiff proved that the school house had been used by the old School Committee for 25 or 30 years, and continuously up to the adoption of the new system. That in the year 1870, a free school had been taught in the house for two months. Defendants' counsel requested, in writing, special instructions. These special requests are eleven in number, but as the important exceptions are repeated, and discussed in the opinion of the Court, it is unnecessary to set out the others.

There was a verdict and judgment for the plaintiff and defendants appealed.

*Henderson* and *Kerr*, for the plaintiff.
*Blackmer & McCorkle* and *Bailey*, for the defendants.

PEARSON, C. J. Many points were made in the Court below, but we will notice only the three that were urged on the argument here.

1. The deed, under which the plaintiff makes title, conveys the *locus in quo*, to the School Committee of the *thirty-eighth district of common schools and their successors in office*, of the

county of Rowan. The deed was executed in 1848, and the plaintiff is *not the successor* of the school committee existing at that date.

We think it entirely clear, that the plaintiff is the *successor* of the School Committee of the thirty-eighth district of common schools of the county of Rowan, existing at the date of the deed, and as such successor, is entitled to all of the property, and is subject to all of the liabilities of its predecessor, acc rding to the Constitution and legislation in regard to common schools; in the same way that the Commissioners of a county are the successors of the justices of the county, under the old system, in regard to the executive duties, rights and liabilities of such justices. *Carson* v. *Commissioners of Cleaveland*, 64 N. C. 566. Indeed, our case is stronger; for the functions of the Justices of the Peace, as a corporation, were divided; its *judicial* functions being transferred to the Superior Courts, and the Courts of Justices of the Peace, while only its executive functions are transferred to the Commissioners of the county: still it is held that the Commissioners of the county, although not the representative of the Justices of the Peace, are the successors of the Justices of the Peace, entitled to their property and liable for their contracts; whereas the func tions of the school commit ees of districts, under the old system are all transferred to the school committees of the townships, and are incidental departures form the exact limits of the dis- trict. This can make no difference, provided the township includes the school house and is substantially the same territo- ry or section of the county, as in our case.

2. The deed contains this qualification: " As long as the system of common schools shall be continued at that place, or as long as it shall not be applied to any other purpose except for schools of any kind." This clause, it is insisted, has the legal effect to make the estate of the School Committee for dis- trict No. 38, existing in 1848, a "base or qualified fee" to said committee and its successors, so long as the *then existing sys-*

*tem of public or common schools* shall be in force;. but the estate terminated, by its own limitation, when the system of common schools was changed and a new system was adopted. An estate to A and his heirs, tenants of the manor of Dale, is at an end as soon as they cease to be tenants of the manor of Dale.

There has been but one instance of a "base or qualified fee" in this State. That is the case of the Cherokee tribe of Indians, in the western part of the State. The tribe was permitted to hold the land, so long as it continued to occupy the territory. As soon as the Indians were removed by the Government of the United States west of the Mississippi, the title of the State was freed of the incumbrance. The occupancy of the Indians was looked upon rather as an analogous incumbrance, than an actual "base or qualified *estate*." It would be something new under the sun, if the addition of a few unnecessary words in a deed of Tobias Kesler to a school committee, for a quarter of an acre of land, of the value of one dollar, can have the legal effect to revive this obsolete estate, which has never been "in force or in use" in this State, or recognized by its laws. Suppose it to have been the intention of Kesler, in limiting the estate to the school committee or its successors, to add a qualification, that the estate of the school committee should be at an end whenever the house, which should be erected on the parcel of land, was used for any other purpose than a school house for *boys*, or a school house for *girls*, it being his conviction that males and females should not go to the same school, or whenever the house was used for any other purpose than a school house for *white children*, or for *free colored children*, it being his conviction that white and colored children should not go to the same school, and that proper and apt terms had been set out in the deed to make this qualification. It would seem that the Courts could not give effect to this intention, for several reasons. Among others, it is against public policy; for "great detriment would, arise and much con-

fusion of rights, if parties were allowed to invent new modes of holding and enjoying real property, and to impress upon land a peculiar character which should follow the land into all hands, however remote." *Keppel* v. *Bailey*, 2, 577, cited in *Blount* v. *Harvey*, 6 Jones 186.

II. It is an attempt to substitute the notions and caprice of individuals, in the place of the wisdom and discretion of the General Assembly, and to take from the legislative department of the Government the power to regulate and control the system of common schools.

III. The school committee, under its power to acquire suitable sites for school houses by purchase or donation, were not authorized to accept a site and erect school houses thereon at the public expense, if the title to the land was clogged by any such condition or qualification. The condition or qualification being repugnant, and inconsistent with the object of the grant, is void, and must be rejected, in the same way that a condition annexed to an estate in fee simple, that the grantee shall not alien, or to an estate tail, that the donee shall not levy a fine or suffer a common recovery, is rejected and treated as surplusage, as repugnant to the nature of the estate.

IV. In this instance, the condition or qualification has not, as yet, been violated, for the school law provides, " The school committees shall consult the convenience of white residents, in setting the boundaries of districts for white schools, and of colored residents, in setting the boundaries of colored schools. The schools of the two races shall be separate, &c." So the condition or qualification has not been violated, and the estate of the committee still continues. It will be time enough to determine the rights of the grantee, when the contingency happens.

But a decisive reply, to the position assumed by the counsel, is, that the deed does not contain apt and proper terms to create a condition, or a qualification, or even a covenant to run with the land. See *Norfleet* v. *Cromwell*, 64 N. C., 1. So the

position has nothing to rest on. The clause is, "as long as the system of common schools shall be continued, &c." It is not restricted to the system of common schools existing at the date of the deed ; that is very properly left to be regulated by law ; and the amount of the qualification is, that the parcel of land shall be used for no other purpose except for schools of any kind," and when the system of common schools shall be abrogated and the School Committee shall cease to exist as a corporation, the estate shall terminate. which is neither more nor less than the law implies. So this clause is mere surplusage, inserted by a draftsman, not skilled in regard to the legal effect of deeds to corporations.

3. The grantee was an illiterate man, unable to read, and demanded that the deed should be read to him. This was refused, and the deed is of no legal effect.

This is a rule of the common law, adopted to prevent fraud and circumvention. If a grantee, although an illiterate man, executes a deed without demanding that it should be read, the deed takes effect ; here there was a demand, but there was no *refusal ;* for Peeler excused himself, by frankly admitting that he also was unable to read the deed. This fact, which is conceded to be true, puts fraud and circumvention out of the question. Kesler then had his election, either to decline to execute the deed, until some person was procured to read it to him, or else to waive his demand to have it read and "go it blind," in the strong language of his Honor in the court below. He elected to waive a demand to have the deed read to him, and so the case stands, as if he had executed the deed without requiring it to be read, and the rule has no application. It only applies to cases where the grantee or the person who, as his agent, applies to have the deed executed, is called on to read it, and refuses or declines to do so, under some *false pretence,* and in this way procures the execution of the deed by fraud and circumvention.

The point, that the action cannot be maintained, unless the plaintiff was in the actual or constructive possession of the *locus in quo*, at the time of the alleged trespass, is excluded by the verdict, for the jury find that the plaintiff was " lawfully possessed."

There is no error.

PER CURIAM.                                     Judgment affirmed.