NANCY DIXON v. WILMINGTON SAVINGS AND TRUST COMPANY.

*Action to Declare Mortgage Void—Deed, Void and Voidable— Fraud in Factum—Fraud in Representation or Treaty—Innocent Holder.*

Where, under the fraudulent representation of her agent, whom she trusted implicitly, a party executed to a third party a mortgage on her land without reading it or requesting it to be read to her, and delivered it to the agent who obtained the money thereon and kept the proceeds for his own purposes: *Held*, in an action to have the mortgage declared void, that the fraud being in the representation or treaty, and not in the *factum*, the deed was not void, but only voidable in a court of equity, which will not grant relief against an innocent purchaser who has been induced to part with his money on the faith of a mortgage duly executed according to law.

CIVIL ACTION, heard on complaint and demurrer at the Fall Term, 1893, of NEW HANOVER Superior Court, before *Boykin, J.*

The plaintiff, complaining against the defendants, alleges:

" 1. That she is administratrix of the estate of R. E. L. Dixon, deceased, having qualified as such on the ____ day of December, 1893.

" 2. That her intestate R. E. L Dixon was the owner of a certain note and deed of mortgage upon the following piece or parcel of real estate situated in the city of Wilmington, and described as follows:  *  *  *

" 3. That the said note and mortgage was for the sum of $300, executed on the 31st day of December, 1883, by the plaintiff Nancy Dixon to Thomas F. Bagley as trustee; and after $100 had been paid upon the same on July 1, 1884, by the said Nancy Dixon, the plaintiff, the said note and mortgage were both assigned and transferred to the said R. E. L. Dixon, the said intestate, by the said Thomas F. Bagley, trustee, the consideration being $200 paid to the said Bagley by the said R. E. L. Dixon on the same day that the said assignment or transfer of the said mortgage was made, to-wit, February 11, 1886 ; and on the same day and date a record of said assignment and transfer was entered upon the records of New Hanover on the margin of the page on which said mortgage was recorded.  And sometime thereafter, to-wit, January 24, 1887, the said R. E. L. Dixon wrote on the margin of the page of the said records of New Hanover County, an agreement not to foreclose said mortgage until after the death of his mother, the said Nancy Dixon, this memorandum being a copy of an agreement written upon the mortgage itself about the time the same was assigned to him by the said Thomas F. Bagley, trustee.

" 4. That subsequently to the date above mentioned, and subsequently to the death of the said R. E. L. Dixon, the said Thomas F. Bagley, without the consent of the said R. E. L. Dixon, or any one acting for him with authority so to act, and without any authority from the plaintiff Nancy Dixon, partially erased from the record of New Hanover the memo-

randum of the assignment made by him as aforesaid, and
without any authority so to do, did, on June 4, 1889, mark
the said mortgage fully satisfied and cancel the same.    And
this act of the said Thomas F. Bagley, plaintiffs are advised,
was null and void, and that the said note and mortgage
remains and is now in full force and effect.

"5. That sometime thereafter, to-wit, March _____, 1890,
there was placed upon the record in the Register of Deeds
office in New Hanover County a paper-writing purporting to
be the deed of mortgage from the said Nancy Dixon to the
Wilmington Savings and Trust Company for the sum of
eight hundred ($800) dollars, bearing date March ____, 1890,
which paper-writing this plaintiff Nancy Dixon declares to
be fraudulent and void.    And she alleges as follows: That
she never executed any note or deed of mortgage or other
conveyance to the Wilmington Savings and Trust Company;
that about the latter part of the fall or beginning of the win-
ter of 1889, one John C. Davis, well known to her as a promi-
nent member of her church, a leader in the Sunday School
of said church, to-wit, the Fifth Street Methodist, and a
prominent lawyer in the city of Wilmington, whom she had
known from his boyhood, and who had been intimate in her
family, approached her with the statement that he knew her
to be a hard-working woman, and that he had been endeav-
oring for sometime past to find a way in which he could be
of service to her, and that he had at last found a way; that
there was one R. M. Williams living in the city of Wilming-
ton who wanted to borrow from him on bond and mortgage
the sum of $800, and that he (Davis) intended to lend him
the money, of which he had at that time all he desired, and
that the interest from said loan he intended to give to
the plaintiff Nancy Dixon, and he was also going to turn
over the note and mortgage which the said Williams was to
give to him in order that Williams might think that she
had loaned the money, but that as life was very uncertain,

and in the event of her death no one would know that he (Davis) and not she had made the loan, he desired her to give him a paper-writing setting forth the fact that the loan was made by him, and he was giving her the interest thereon. This she consented to do, and signed the same without reading the same, her eyesight being very defective, and having the most implicit confidence and reliance upon his honesty and integrity, and was induced thereby to sign the same without having it read to her.  And she alleged that she signed the same in the presence of the said John C. Davis only, and that there was no witness to the same, but that immediately upon her signing it he took it from the table upon which it was lying and carried it away, and this she asserts is the only paper-writing of any nature or any kind that she signed or gave to anyone on or about the period mentioned, or for many years previous thereto; but she is informed and believes and upon such information states that the said deed of mortgage to the Wilmington Savings and Trust Company purporting to be signed by her is the paper-writing which was obtained from her by fraudulent acts of the said Davis; and she alleges and charges that if it be the same, that her signature to the same was obtained through fraudulent misrepresentations and fraud, and that the paper-writing purporting to be a mortgage is absolutely without consideration, fraudulent and void.

" 6. That for about six or eight months the said Davis did pay her about $5 a month, which she said was the interest given to him by Williams; and a short time after she signed the paper he also gave her a note and mortgage for $800, purporting to be signed by one R. M. Williams, but she was informed and advised, and upon said information states that no such person as R. M. Williams ever existed, and his signature to both the note and mortgage was forged by the said Davis; and just after the arrest and imprisonment of the said Davis, when, for the first time, she learned that the Wil-

mington Savings and Trust Company had a deed of mortgage upon her property, she made diligent inquiry, but could neither find that any such person as R. M. Williams lived or had any property in the city of Wilmington, and that he was not the owner of the property described in the deed of mortgage given to her by Davis, and which purported to have been signed by the said Williams."

Wherefore, the plaintiff prays judgment—

" 1. That the said paper-writing above described, purporting to be a deed of mortgage from Nancy Dixon to the Wilmington Savings and Trust Company, be decreed to be null and void, and ordered to be cancelled.

" 2. That if such paper-writing should be declared valid as a mortgage, that this Court will decree it to be a second mortgage, subject to the payment of the amount remaining due and unpaid upon the note and mortgage described in this complaint as executed by Nancy Dixon; and Thomas F. Bagley, trustee, and by him assigned for value to plaintiff's intestate, R. E L. Dixon.

" 3. That the Wilmington Savings and Trust Company be restrained from foreclosing their alleged mortgage until this suit is ended.

" 4. That a commissioner be appointed to sell the said property under the provisions of the said mortgage from Nancy Dixon to Thomas F. Bagley, and after paying to the plaintiff so much of the proceeds thereof as will satisfy and pay the balance due upon said mortgage to plaintiff's intestate, to pay over the residue to the plaintiff, the said Nancy Dixon.

" 5. And for the costs of the action."

The defendant Trust Company demurred to the complaint of Nancy Dixon individually, which is stated in the fifth and sixth articles of the complaint, for that it does not state facts sufficient to constitute a cause of action, in this: " That the facts therein stated do not constitute such fraud upon the

plaintiff Nancy Dixon inducing her to sign the mortgage to the defendant as is liable against a *bona fide* purchaser for value without notice, and the complaint does not allege that the defendant, The Wilmington Savings and Trust Company, participated in any fraudulent practice or had any notice or any such practices, or that it did not pay full value for such mortgage."

The demurrer was sustained, and plaintiffs appealed.

*Mr. T. W. Strange,* for plaintiff (appellant).
*Mr. George Rountree,* for defendants. ·

SHEPHERD, C. J.: However much we may sympathize with the plaintiff, who, like the defendants in the case of *Medlin* v. *Buford,* decided at this term, has been cheated and defrauded by reason of her perfect confidence in the rectitude and piety of John C. Davis, we are unable to see how we can grant her the relief prayed for. To do so would amount to the abrogation of some of the plainest principles of jurisprudence, and so unsettle the law that but little confidence could hereafter be placed in those solemn assurances of title so necessary to the welfare and repose of society. The grave results of holding a deed, executed under the present circumstances, to be void and not voidable merely, are mentioned in the case of *Medlin* v. *Buford, supra,* in which will also be found an enunciation of the principles which apply to this appeal. There is no pretence here that the plaintiff did not intend to sign and deliver the instrument in question. She alleges that she consented to do so, and executed the same without reading or having it read to her. In addition to the authorities cited in Medlin's case, *supra,* we will add the case of *School Com.* v. *Kesler,* 67 N. C., 448, in which it was held that if a grantor, although an illiterate man, executes a deed without demanding that it be read, or elects to waive a demand for the reading, the deed will take effect.

See, also, 1 Devlin on Deeds, 225, where it is said : " It is at the peril of the party to whom the deed is made that the true effect and purport of the writing be declared, if required, but if the party who should deliver the deed doth not require it, he should be bound by the deed, although it be penned against his meaning." It being very clear, then, that the deed is not void by reason of fraud in the *factum*, it must follow that it can only be avoided in equity, and for the reasons given in Medlin's case, that Court will never grant relief against an innocent party who has been induced to part with his money on the faith of a mortgage duly executed according to law. By the gross negligence of the plaintiff, she allowed herself to be imposed upon by the fraudulent representations of Davis, and executed a mortgage directly to the defendant Trust Company. She delivered this mortgage to Davis, and upon the faith of this deed, acting presumably as her agent, he obtained the money. This is one of those " hard cases " that are sometimes called " quicksands " of the law, but the improvidence of the few should not tempt the Courts to depart from those well settled principles upon which depend the safety and security of the many. The judgment sustaining the demurrer is affirmed.

Affirmed.