F. WADE CURRIE AND WIFE v. WILEY B. MALLOY AND WIFE.

(Filed 28 March, 1923.)

1. Pleadings—Amendments—Peremptory Order for Trial—Appeal and Error—Objections and Exceptions.

An exception to an order of the Superior Court allowing an amendment to the complaint and setting the case for trial peremptorily on a certain day of a subsequent term, specifying the amendment only, confines the exception to the order allowing the amendment, and no exception being taken to that part of the order setting the case peremptorily for trial, there is nothing in that respect upon which an assignment of error may be based.

2. Same—Court's Discretion.

Under the liberal policy of our procedure in allowing amendments to pleadings, it is within the discretionary power of the trial court to permit the plaintiff to amend his complaint by alleging fraud and deceit, when the same is germane to the original inquiry and does not substantially change the cause of action alleged. *Semble,* when the defendant shows

CURRIE *v.* MALLOY.

to the court that such amendment allowed upon the trial has taken him by surprise, and finds him unprepared, the court may withdraw a juror, order a mistrial, and continue the case.

**3. Deeds and Conveyances—Title—Minors—Intent—Evidence.**

Where the question of the interest of minors in the title to lands is involved in a suit to recover damages for defendants' fraud and deceit in misrepresenting that the fee-simple title was in himself, it is competent for the minor to testify that she had deposited her check with the clerk of the court to redeem her interest, as a fact accomplished; and error, if any, committed by the court in having previously permitted her to testify as to her future intention to sue to recover such interest is rendered harmless.

**4. Fraud—Deceit—Evidence—Lis Pendens—Actions.**

In an action to recover damages for the defendant's fraud and deceit in inducing the plaintiff to convey his title to his lands in exchange for the defendant's lands when the latter had only title to a part thereof, a suit concerning the matter in dispute, pending in the county, is not effectual as a *lis pendens* against the defendant's positive and unequivocal assertion of title, upon which the plaintiff relied, and which induced him to part with the title to his own lands.

**5. Same—Deeds and Conveyances—Written Instruments.**

Where the defendant has by deceit and fraud induced the plaintiff to convey his lands in exchange for defendant's land, upon delivery of defendant's deed duly executed, containing full warranty of title, the fraud is in the treaty, and the deed being upon its face in accordance with the representations of the defendant, the principle requiring that one afforded full opportunity to read an instrument will be bound by its terms has no effect upon the plaintiff's right to recover.

**6. Appeal and Error—Objections and Exceptions—Instructions—Contentions.**

The trial judge, as has often been said and reiterated, should be afforded an opportunity to correct an erroneous statement of the contentions of the parties in his charge to the jury, and an exception thereto after verdict comes too late to be considered on appeal.

**7. Appeal and Error — Instructions — Requests for Instructions—New Trials.**

Exception that the charge of the court was not sufficiently full upon a phase of the controversy arising upon the pleadings and evidence should be taken to the refusal of the court of appellant's prayer for instruction covering the matter complained of, and where the principles of law involved are sufficiently stated in the general charge, a new trial will not be granted on appeal.

**8. Appeal and Error—Instructions—Evidence—Presumptions.**

The evidence as recited in the charge of the court will be assumed to be correct on appeal, it being required that the appellant show error.

APPEAL by defendant from *Bond, J.,* and a jury, at October Term, 1922, of CUMBERLAND.

. WALKER, J., stating the case: Plaintiffs purchased land described in the complaint from the defendants for $1,000, by deed with usual covenants of seizin, encumbrances, and warranty, and this was admitted by the answer and in the case.

At the time of and before the defendants purchased the land, and at the time they sold to plaintiffs, an action entitled *"Edge v. Edwards"* was pending in the Superior Court of Cumberland County, the place of residence of all parties, wherein defendants' grantors alleged they were the owners of the land by reason of a tax title,. and wherein certain minor heirs alleged that they were the owners of said land. Before trial of the present action, defendants made themselves parties to the action of *Edge v. Edwards,* and there was a final judgment that defendants had a good title to only one-fourth interest in said land, and title to another one-fourth interest subject to disaffirmance by one of the said minor heirs, and that defendants had no interest in the other two-fourths interest, which was the property of the two other minor heirs. The defendant Malloy admitted, on his direct examination, that defendants' immediate grantor had told him at the time of the purchase that he, the grantor, had only a tax deed against minor heirs for a portion of the land, and that one of the minor heirs was in an institution for the feeble-minded.

At the time of and before plaintiffs purchased, defendants represented to plaintiffs that they had a perfect title to the lands. And defendant Malloy admitted upon the trial that "before the trade was completed they (plaintiffs) came and asked me about the title, and I told them that the title was all right."

The jury returned the following verdict in response to the issues submitted to them:

"1. Did the defendant sell the lands described in the complaint to the plaintiffs for $1,000? Answer: 'Yes.'

"2. Did the deed of the defendant, referred to in the complaint, fail to convey a good and indefeasible fee-simple title to said land? Answer: 'Yes.'

."3. Was there a compromise of matters in difference between the plaintiffs and defendant, as alleged? Answer: 'No.'

"4. If so, was the alleged compromise obtained by the defendants induced by false and fraudulent statements made to the plaintiffs by the defendants, or either of them, as alleged in the complaint? Answer:

"5. Was the payment of the said $1,000 to the defendants induced by false and fraudulent statements made to the plaintiffs by the defendants, or either of them, as alleged in the complaint? Answer: 'Yes.'

"6. What damages, if any, are the plaintiffs entitled to recover of the defendants?    Answer: '$1,000.' "

Judgment was entered on the verdict, and defendants appealed.

*Bullard & Stringfield, W. C. Downing, and Henry E. Williams for plaintiffs.*

*Dye & Clark for defendants.*

WALKER, J., delivering the opinion of the Court, after stating the case as above:    We will now consider the exceptions in some detail, so as to be sure that we cover fully the grounds of contention as taken by the respective parties.

Exception one is abandoned.

Exceptions one and a half, two, and seven:    It appears by the record that defendants excepted to the order allowing amendment and peremptorily setting case for trial only "in so far as the same permits the amendment," therefore, the defendants did not at the time except to the setting of the case for trial at the next term, but in effect if not in form, only excepted to the amendment of the complaint.    Had they excepted to the setting of the case for trial at the next term, the judge would have had an opportunity to pass upon the exception, and would have, if he found proper, set the case at a subsequent term, but by his failure to except at the proper time there is nothing for review under this exception.    The assignment of error in the case on appeal cannot cure the failure to except at the time, because assignments of error must be founded upon exceptions properly and duly taken.    *Borden v. Power Co.,* 174 N. C., 73; *Harrison v. Dill,* 169 N. C., 544; *S. v. Tyson,* 133 N. C., 699; *S. v. Davenport,* 156 N. C., 611.

Exception two:    This exception is also untenable.    It is said, speaking to the exact point, in *Dockery v. Fairbanks,* 172 N. C., 529:    "The only question presented is as to the authority of the trial judge to permit an amendment alleging fraud in an action for damages for false representation and breach of warranty in the original sale.    The defendant was in court, and the amendment alleging the fraud was germane to the original complaint, and it was in the discretion of the trial judge to permit the amendment of the complaint to be filed.    If this had been done during the trial, and the nature of the amendment was such that the defendant would have been taken by surprise, not being prepared to meet the charge of fraud, then, perhaps, it might have been error not to withdraw a juror and grant the defendants a continuance; but this was not done by defendants.    The Code favors a liberal allowance of amendments, in order that cases may be tried on their merits.    There could have been no advantage in dismissing the plaintiffs' action and requiring

14—185

him to bring a new action setting up what is now alleged in the amended complaint. That would have been violating, at least, the spirit of The Code and our procedure. The court, in its sound discretion, could allow the amendment, which was simply an additional ground to that alleged in the original complaint, or rather an enlargement, or amplification of the cause of action already stated, and not the setting up of a new cause of action. *Joyner v. Early,* 139 N. C., 49; *Worth v. Trust Co.,* 151 N. C., 196; *Pritchard v. R. R.,* 166 N. C., 535; 31 Cyc., 409, 411. A liberal construction of pleadings and the granting of amendments to perfect the pleadings and base the cause upon its merits is favored by our present system of pleadings and practice. *Blackmore v. Winders,* 144 N. C., 215; *Brewer v. Wynne,* 154 N. C., 467.

Exception seven: It appearing that defendants did not except to the order peremptorily setting the case for trial at October term, and it further appearing that the amendment, to which exception was taken, was allowed in accordance with the statute and our decisions, this exception must fail.

Exceptions three and four: The witness (Sudie Belle Grantham, who was Sudie Belle Edwards, and one of the minors) was permitted to testify that when she became twenty-one years of age she intended to sue to recover her interest in this land. While it may not have been competent for the witness to testify what she intended to do, it was competent for her to state, as she did afterwards, that she had deposited with the clerk a check to redeem her interest in the land, because this was a fact accomplished and was not merely an expression of her intention as to what she would do in the future. The deposit of the check was an equivocal act indicating clearly her intention to redeem the land, or her interest in it, and thereby to disaffirm her deed, and this makes the expression of her intention "as to what she would do in the future," while on the witness stand, but harmless error, even if it was not competent. We have generally held that error in admitting testimony is harmless, and not sufficient to reverse the judgment of a court below, unless it appears to have been prejudicial to the party complaining. *Southall v. Shields,* 81 N. C., 28; *Freeman v. Brown,* 151 N. C., 111.

Exceptions five and six: Exception five is abandoned in defendants' brief. Exception six, that the court erred in not allowing defendants' motion for judgment as of nonsuit at the close of all the evidence, is equally untenable. There was evidence supporting plaintiffs' cause of action, hence the nonsuit could not have been allowed.

The defendants admitted the sale of the land to the plaintiffs for $1,000 in the answer.

Mary S. Currie testified: "Malloy said he was a real estate dealer. That he would sell us the place for $1,000, and make everything all

right; would make us a good deed, and that he had a perfect title. The lot has a three-room house on it, and Mr. Malloy agreed to put on a front porch, a back porch, and another room. He did none of these things. Some time before the trade was closed, I came to Fayetteville to see Mr. Malloy. We were living on the place then, though we had not bought it, as I was told by a neighbor that Mr. Malloy had no title to it. When I came to see him (Malloy) he said the title was good, and he said he and his wife would give me a warranty deed, and insisted that the title was good."

F. Wade Currie, plaintiff, testified: "Mr. Malloy told us he had a nice place containing about 10 acres with two acres cleared, and that he could give a perfect title to it. I relied on his statements from the first. We went to his office and told him that we heard the title was not good, and he told us to go right ahead, that the title was all right, and that he and his wife would make us a warranty deed. He said that we could rest assured and pointed to another man sitting in his office and said he sold him his land and some of the neighbors told him the title was not good, because they wanted the land themselves, and that the title was good."

The defendant W. B. Malloy testified: "Before the trade was completed, they came and asked me about the title, and I told them that the title was all right, and that my wife and I would execute a warranty deed, and that if the title was not all right, we would make it all right. That Mr. Cooper told me, when I bought the land from him, that he had only a tax deed against minor heirs for a portion of the land; he told me that he understood that one of the minor heirs was in Kinston, N. C., in an institution for the feeble-minded."

See stipulations at end of transcript, record, page 52, which are as follows:

In this case it is agreed by Dye & Clark, attorneys for the defendants, and Henry E. Williams and W. C. Downing, attorneys for the plaintiffs, that defendant's statement of case on appeal as served upon the attorneys for the defendants by the attorneys for the plaintiffs be amended as follows:

1. The interlineations made therein with pen and ink shall be and constitute a part of said statement.

2. To the cross-examination of W. B. Malloy shall be added the following, to wit: The South Carolina property has been sold under mortgage; the deed which I executed to Mr. and Mrs. Currie for the land in Cumberland County was held for them by J. O. Talley, attorney, until the time of the alleged compromise; it was then deposited in the LaFayette Bank and Trust Company with the other papers; I went there and got it after the thirty days were out; it has never been recorded; the

Curries have no deed for the Cumberland County land; Mr. Cooper told me when I bought the land from him that he only had a tax deed against minor heirs for a portion of land; and further told me that he understood that one of the minor heirs was in Kinston, N. C., in an institution for the feeble-minded.

And to the direct examination of H. E. Williams shall be added the following, to wit: The alleged compromise of Mr. Malloy was based on the condition that Mr. and Mrs. Currie could get their South Carolina property back with the payments standing just as they were when they first started with Malloy; the compromise failed because Malloy had changed the payments on the South Carolina property, and Mr. Huntley had elected to declare all the indebtedness due.

3. That the summons herein was issued on 21 October, 1921, returnable on 1 November, 1921, and was served on the defendants on 22 October, 1921, and is regular in all respects; and this memorandum may be inserted in the case on appeal in lieu of said summons.

4. That the defendants' statement of case on appeal (so amended) shall be and constitute the case on appeal in this cause.

Mr. Cooper testified: "I told Malloy that I had a tax deed for this land, and that I bought the property from Mr. Page. I also told him that I bought the interest of Neill and Sudie Bell Edwards, and that there were two more Edwards heirs whose interest it would be necessary to purchase to complete the title. I told Malloy that my title was based on a tax deed, and that the property belonged to minor heirs at the time it was sold for taxes. I told him one of the Edwards heirs was living at Kinston, and that I thought the property was subject to be redeemed by the minors."

Plaintiffs introduced summons, complaint, answer, and judgment in *Edge and Malloy v. Edwards,* to which action defendants Malloy were parties, and which action was pending long before the sale to plaintiffs, and the final judgment decreed that defendants had a good title to one-fourth interest only, and an imperfect title to another one-fourth interest, subject to disaffirmance by an infant, and no title to remaining two-fourths interest.

The plaintiffs in this case contend that from the foregoing facts it appears that defendants purchased *pendente lite,* and knew, or are presumed to have known, the true state of the title as set out in the pleadings and the judgment, showing that they had a very imperfect title; that defendants admit that their grantor, at the time of their purchase, told them they were getting only a one-fourth interest absolutely, and another one-fourth interest subject to disaffirmance by an infant; that defendants further admit the sale to plaintiffs for $1,000; and that they represented to plaintiffs that they had a perfect title, and that plaintiffs would

also be protected by the warranty. This, then, fixes defendants with knowledge of their very defective title, yet they admit representing to plaintiffs that they had a perfect title.

It is said in Pollock on Torts, 293: "It seems plausible at first sight to contend that a man who does not use obvious means of verifying the representations made to him does not deserve to be compensated for any loss he may incur by relying on them without inquiry. But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant, and it is now settled law that one who chooses to make positive assertions without warranty shall not excuse himself by saying that the other party need not have relied upon them. He must show that his representation was not in fact relied upon. In short, nothing will excuse a culpable misrepresentation short of proof that it was not relied upon, either because the other (party) knew the truth, or because he relied wholly on his own investigation, or because the alleged fact did not influence his action at all. And the burden of proof is on the person who has been proved guilty of material (or fraudulent) misrepresentation." See, also, *Griffin v. Lumber Co.,* 140 N. C., 514; *Walsh v. Hall,* 66 N. C., 233; *McArthur v. Johnson,* 61 N. C., 317; *Medlin v. Buford,* 115 N. C., 269.

The Court, in the familiar and much cited case of *Pasley v. Freeman,* 3 Term. Rep. (2 Smith's Leading Cases, 1300), settled the principle that a false affirmation made by the defendant with intent to deceive and defraud the plaintiff, whereby the plaintiff receives damages, is the ground of an action upon the case in the nature of deceit. In such an action it is not necessary that the defendant should be benefited by the deceit, or that he should collude with the person who is. And *Kent, C. J.,* in *Upton v. Vail,* 6 Johns., 181, after expressing his approval of the doctrine announced in *Pasley v. Freeman, supra,* said: "The case went not upon any new ground, but upon the application of a principle of natural justice, long recognized in the law, that fraud and deceit, accompanied with damage, is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence." It has been the accepted law in American jurisdiction, and was discussed and adopted by this Court in an opinion once characterized as containing a "mine of learning," and delivered by *Judge Battle,* in *March v. Wilson,* 44 N. C., 144. After an exhaustive review of the English and American cases, the learned justice concludes: "The principle upon which they were decided is that where there was fraud by the defendant, either in word or deed, resulting in damage to the plaintiff, he might sustain an action on the case for such damage."

Whatever doubt may have existed in regard to the right to maintain an action for deceit in contracts for the sale of land respecting acreage,

title, etc., is removed by the decision in *Walsh v. Hall,* 66 N. C., 233. *Dick, J.,* after noting the general rule of *caveat emptor,* says: "But in cases of positive fraud a different rule applies. . . . The law does not require a prudent man to deal with every one as a rascal, and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract. . . . If representations are made by one party to a trade, which may be reasonably relied upon by the other party, and they constitute a material inducement to the contract, and such representations are false within the knowledge of the party making them, and they cause loss and damage to the party relying on them, and he has acted with ordinary prudence in the matter, he is entitled to relief in any court of justice. In our courts the injured party may bring a civil action in the nature of an action on the case for deceit, and recover the damages which he has sustained; and if the remedy will not afford adequate relief he may invoke the equitable jurisdiction of the court to rescind the contract." The learned justice concedes that in holding the injured party, who had been induced by false and fraudulent representation to make a deed for a tract of land to which the grantor had no title, entitled to maintain an action for damages "seems to be in conflict with previous decisions of this Court," citing *Lytle v. Bird,* 48 N. C., 222; *Credle v. Swindell,* 63 N. C., 305. *Bynum, J.,* in *Hill v. Brower,* 76 N. C., 124, says: "The maxim of *caveat emptor* does not apply in cases where there is actual fraud." In that case the fraud consisted in a false and fraudulent representation in regard to the number of acres in a tract of land. *Knight v. Houghtalling,* 85 N. C., 17; Pollock on Torts, 278; Jaggard on Torts, 570. The plaintiffs, upon the facts testified to by them, were held to have a cause of action for the fraud practiced by defendant's agent.

We are, however, of the opinion that the fraud practiced in this case upon the plaintiffs is in the representation or treaty; the plaintiffs signed the paper-writing which they intended to sign, the fraud consists in the false representation by which such signatures were obtained. The distinction is pointed out by *Battle, J.,* in *McArthur v. Johnson,* 61 N. C., 317, in which he says: "An instance of fraud in the *factum* is when the grantor intends to execute a certain deed, and another is surreptitiously substituted for it." Referring to instances of fraud in the treaty or representation, he says: "In all of them it will be seen that the party knowingly executes the very instrument which he intended, but is induced to do so by means of some fraud in the treaty or some fraudulent representation or pretense." *Shepherd, C. J.,* discussing the question in *Medlin v. Buford,* 115 N. C., 269, says: "A deed made by this species of fraud is said to be void, but it will be found upon examination that

this term is indiscriminately used in connection with any deed which may be avoided either at law or in equity. . . . The distinction between void and voidable deeds becomes highly important in its consequences to third persons, because nothing can be founded on a deed which is absolutely void, whereas from those which are only voidable, fair titles may flow."

It is elementary learning, and common prudence requires, that before signing a deed the grantor should read it, or, if unable to do so, should require it to be read to him, and his failure to do so, in the absence of any fraud or false representations as to its contents, is negligence, for the result of which the law affords no redress. *School Committee 'v. Kesler,* 67 N. C., 443. But when fraud, or any device, is resorted to by the grantee which prevents the reading, or having read the deed, the rule is different. *Montgomery, J.,* in *Dellinger v. Gillespie,* 118 N. C., 737, says: "It is plain that no deceit was practiced here. It was pure negligence in the defendant not to have read the contract. There it was before him, and there was no trick or device resorted to by the plaintiff to keep him from reading it." *Judge Bynum,* in *Hill v. Brower,* 76 N. C., 124, says: "The representation of B., and his exhibit of the map and plat of the land, and his calculation of the quantity, not only caused the defendant to make no survey, but put to sleep any further inquiry as to the quantity of the land. An actual survey was thus prevented by the artifice and contrivance of the other party." We have discussed this question somewhat above. The fraud here was not in the *factum,* but in the treaty. It did not appear on the face of the deed, but existed outside of it in the *colloquium,* or negotiation, or final contract, that led up to it. The plaintiffs, therefore, were not guilty of any negligence in ascertaining the facts and governing their conduct accordingly, as they were clearly misled and thrown off their guard by the positive representations and assurances of the defendant as to the state of the title. We have shown already what Pollock in his treatise on Torts says about this matter, p. 293. Jaggard on Torts, 595, says: "The law recognizes, in many circumstances, the right of a man to rely upon the statements of another. . . . There is, indeed, a strong inclination on the part of courts to hold, without any qualification, that a person guilty of a fraudulent misrepresentation cannot escape the effects of his fault on the ground of the injured party's negligence." This question has recently undergone examination in a court of another jurisdiction, where it was said: "The doctrine is well settled that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence' as against his own deliberate fraud. Even when parties are dealing at arm's length, if one of them makes to another a positive statement, upon which the other acts (with the knowledge of the party making such statement) in

confidence of its truth, and such statement is *known to be false* by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that when it appears that one party has been guilty of an intentional and deliberate fraud by which to his knowledge the other party has been misled or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care." *Linnington v. Strong,* 107 Ill., 295. And was also considered in another state with similar ruling. *Kilmer v. Smith,* 77 N. Y., 226. "If a bona fide inquiry be made in a proper quarter, and a reasonable answer be given, a man may rest satisfied with the information and need not make further inquiry," and we may add, provided a man of ordinary care and prudence would have relied on it. Kerr on Fraud and Mistake, 256; 1 Big. on Fraud, 528; Fetter's Eq., 136; Biddle on Warranty, sec. 326.

The defendants complain that nowhere in the charge did the judge give the jury any explanation of what fraud is, nor did he tell them what they would have to find in this case in order to justify them in finding fraud. And they complain further, that having permitted a question of fraud to be considered in this case, it became peculiarly the duty of his Honor to distinguish between representations as to title made in good faith, and representations alleged to have been fraudulently made. About all his Honor had to say about fraud was this: "On the other hand, plaintiffs say that it was a scheme from the start by which the defendants managed to exchange some property for which they knew they had no title for the property in South Carolina, which belonged to the plaintiffs. The plaintiffs contend that the defendants wanted to get the South Carolina property, and that, in order to carry out the scheme, the defendants advised the plaintiffs that it was unnecessary for them to employ a lawyer to look up the title; that the title was good, and that they would give the plaintiffs a warranty deed, and that as a result of all this they lost their property in South Carolina, and the defendants got their property, worth $1,000, the payments on which he agreed to protect, and which he did not protect, and that they are the losers thereby. If the plaintiffs have satisfied you by the greater weight of the evidence that the payment of $1,000 by the plaintiffs to the defendants was induced by fraud and misrepresentations, you will answer the fifth issue 'Yes'; otherwise, you will answer it 'No.' The defendants say, as I

stated a moment ago, that there was no fraud, and that they have been at all times ready, able, and willing to protect their contract, but the plaintiffs contend that the defendants told them that there was no use to get a lawyer to look into the title, and that they sold them the tract of land knowing very well that they had no title thereto," and we call attention to the fact that there was no evidence that the defendants ever told the plaintiffs not to secure a lawyer.

The defendants now except, as appears above, because, as they say, there was no evidence that the defendants ever told the plaintiffs not to retain or consult a lawyer. But this kind of exception violates the universal and now well settled rule that if the judge erroneously states a contention, the appellant must have directed his attention to it in seasonable time so that he may correct it and not notice it for the first time in an exception or assignment of error or in his brief, and, besides, we must accept as binding upon us what the judge states was the evidence. *S. v. Burnette,* 184 N. C., 783-784.

While we are of the opinion that the charge on the question of fraud committed by the defendants might well have been more pointed, and the meaning of such fraud as here imputed to the defendants more fully and clearly explained to the jury, we are unable to say that, in the absence of a prayer from the defendants for a more specific instruction, the alleged defect in the charge, if it exists, would justify a reversal in their favor.

To recapitulate in part:

1. The amendment of the complaint and setting the case for trial at October term, less than a month thereafter (C. S., 557), if error, was excepted to only in part, and that the first part of the order, relating to the amendment, as we have shown, which was clearly permissible. The other part of the order, as to the trial at October term, not having been included in the exception, is not now available to the defendants as error, and exception thereto was waived by their silence. Besides, the amendment was merely a more extended statement of the cause of action and not a new cause. *Hardware Co. v. Banking Co.,* 169 N. C., 746, does not apply here.

2. The expression of the witness as to the deposit with the clerk of her check to redeem her interest in the land was palpably harmless, in view of other evidence to the same effect, and was not prejudicial. *Southall v. Shields,* 81 N. C., 28; *Freeman v. Brown,* 151 N. C., 111. This covers exceptions numbers three and four.

3. The court could not have nonsuited the plaintiffs with proper consideration of the evidence, which presented different views, and therefore should have been submitted to the jury.

4. In the absence of prayers for more definite instructions (*Simmons v. Davenport,* 140 N. C., 407), the defendants cannot avail themselves of any defect in the charge as to damages, if there is any. The rules, as stated in *Crowell v. Jones,* 167 N. C., 389, and in *Eames v. Armstrong,* 146 N. C., at p. 9, and in *Bank v. Glenn,* 68 N. C., 35, are conceded to be correct and proper ones, but not applicable here, as there is nothing that brings them into play. His Honor gave instructions as to damages, somewhat general, it is true, but sufficient in the absence of compliance with the established rule as to specific prayers for a better or fuller statement of the law.

A careful analysis of the entire record, in all its varied aspects, has disclosed no reason why the judgment should be disturbed.

No error.