PARKER v. THOMAS AND WAGGONER ET AL.

(Filed 31 December, 1926.)

1. **Bills and Notes—Mortgages—Fraud in the Factum—Holder in Due Course—Fraud in the Treaty.**

Where a mortgage on lands and the note it secures are obtained through fraud in the *factum,* it is void and the endorsee of the note can acquire no rights thereunder though a holder acquiring the instrument in due course, before maturity and without notice of the infirmity of the instrument, but otherwise if the fraud was in the treaty.

2. **Fraud—In Factum—In Treaty.**

The established principles applicable to fraud in the treaty or negotiations of an instrument, and fraud in the *factum,* are, as applicable to the former, when under misrepresentations the person not under disability signs the identical instrument intended; when he signs under undue influence; when he may read and understand the instrument, but fails to do so; and as to the latter, where the papers are surreptitiously changed; or where there is false reading thereof upon request to a blind or illiterate person; where the signature is procured by fraud, imposition or artifice; or by trick, artifice or imposition other than false representations as to the contents; or want of identity between the instrument intended and the one signed.

3. **Instructions—Statutes—Fraud in the Factum—Appeal and Error—Requests for Instructions.**

Where there is evidence in a suit to set aside an instrument for fraud, tending to show the existence of the fraud both in the *factum* and in the

treaty, a failure of the trial judge to charge the principles arising therefrom upon fraud in the *factum*, and to sign a judgment in accordance with the principles of fraud in the treaty, is reversible error under C. S., 564, though a special request therefor has not been tendered by the complaining party.

CIVIL ACTION, before *Lyon, J.,* at March Term, 1926, of MECKLENBURG.

The plaintiff brought a suit against the defendants, Thomas and Waggoner, partners trading under the firm name of Mecklenburg Realty and Insurance Company, J. A. Stokes, trustee Merchants and Farmers National Bank of Charlotte, and J. P. Tucker, alleging that in November or December, 1924, the defendants, conspiring among themselves, devised a plan or scheme to cheat and defraud the plaintiff, and that in furtherance of said plan the defendants, Thomas and Waggoner and Tucker, drafted a note in the sum of $2,600, and a deed of trust upon plaintiff's property, securing said note, and represented to the plaintiff who was an illiterate person, that said note and deed of trust securing same, constituted a deed for plaintiff's land, which she was selling for $3,500.

The plaintiff contended that she was the owner of a home place, and that she was approached by the defendants, Thomas and Waggoner, to ascertain if she would sell her property. After some negotiations the said defendants offered her $3,500 for her property, and she agreed to sell at that price and to buy a piece of property on Rozzell Ferry Road for $5,500 from Mrs. J. E. Taylor.

The plaintiff testified that by request she went to the office of Thomas and Waggoner, and that a deed had been prepared by them for her home place, and that she signed the deed or authorized her daughter to sign same in her behalf.

The defendants contend that what Mrs. Parker signed was a note for $2,600 and a deed of trust securing same.

The plaintiff testified in regard to the transaction as follows:

"I signed what they said was a deed. It was signed by my daughter for me. I cannot read or write much. Mr. Thomas and Mr. Waggoner said I was signing a deed. . . . I never signed a mortgage. . . . I did not sign any mortgage in Mr. Waggoner's office; if I did, I did not know what I was signing. . . . I just signed one paper which they said was a deed. My daughter signed it for me. . . . I did not sign no deed of trust." . . .

The daughter of plaintiff testified: "I signed the deed for mother. . . . I do not know whose signature this is on the other paper you hand me. (Note for $2,600.) It is not mine. It is not my mother's signature either. I could not tell you whose signature that is on this

third paper you hand me. (The deed of trust to J. A. Stokes, Trustee, securing the $2,600 note.) . . . I did not sign the deed of trust dated 19 December, 1924, to J. A. Stokes, Trustee for A. R. Thomas. . . . I did not read the paper they asked me to sign; they did not let me read anything. I asked to read it, but they were in a rush to get through with it. . . . my mother did not sign the paper."

The defendants, Thomas and Waggoner, offered evidence tending to show that the plaintiff came to their office, and that there was presented for her signature this note for $2,600, dated 12 December, 1924, due twelve months after date and payable to A. R. Thomas, and a deed of trust upon her home place, securing said note, to J. A. Stokes, trustee for A. R. Thomas, party of the third part. The note purported to be signed: "Mrs. Mary J. Parker, her X mark." Witness: J. P. Tucker. The deed of trust purported to be signed: "Mrs. Mary J. Parker, her X mark. Witness: J. P. Tucker."

The defendant, Thomas, testified: "I was present when the note and deed of trust, dated 12 December, 1924, was executed. Miss Brown, a notary public, was there then. Miss Brown told Mrs. Parker and her daughter it was for a $2,600 deed of trust on their property in North Charlotte, and they did not say anything, but went ahead and signed it. I do not know who signed the paper for Mrs. Parker, but I think Miss Brown signed it. Mrs. Parker wanted her daughter to sign it, and she said she could not see, for her to go ahead and sign it or get somebody else to sign it and let her make her mark. I did not make any statement to her about it being a deed to her property in North Charlotte."

Miss Brown, the notary public referred to, testified: "I signed that deed of trust from Mrs. Mary Parker to J. A. Stokes, trustee for A. R. Thomas, in the amount of $2,600; that is my writing. . . . I was called in the office to take the notary's acknowledgment. When I got there the paper was handed me, and I looked at it and told Mrs. Parker to sign it, and she said she could not sign her name, and asked her daughter to sign her name for her. I told her she would have to sign her own name or make her mark, and she told me to go ahead and sign her name and she would make her mark, and she did it to both papers. I explained to her what the paper was."

There was other testimony to the same effect.

J. A. Stokes, trustee in the deed of trust, is the cashier of the defendant, Merchants and Farmers National Bank. On 12 December, 1924, the defendant, Thomas, executed a collateral note to the Merchants and Farmers National Bank, attaching the purported Parker note as collateral security thereto, and thereupon, after assurance from reputable attorneys that the title to the property was good, the bank discounted said note, and, after paying off certain prior liens upon the property of

plaintiff, Mrs. Parker, and certain discounts and charges, paid the balance of the net proceeds upon order of the defendant, Thomas, to Mr. Carswell, an attorney. The defendant, Thomas, sent the balance of the proceeds of said note to the plaintiff. This balance amounted to $42.61. Shortly thereafter the plaintiff employed counsel and brought this suit for the purpose of canceling said note and deed of trust for $2,600.

The plaintiff contended that she had agreed to sell her home place for $3,500 and buy the property of Mrs. J. E. Taylor on Rozzell Ferry road, and that she never intended to sign a deed of trust or mortgage upon her home place for $2,600.

The defendants contended that the note and deed of trust was executed by the plaintiff as a part of the transaction to settle the cash payment that the plaintiff was to make upon the Rozzell Ferry road property. The defendant bank contended that, as it had discounted the Thomas note to which plaintiff's note was attached as collateral without notice of any fraud as alleged by the plaintiff, it was an innocent purchaser of the plaintiff's note for $2,600.

The issues and answers of the jury thereto were as follows:

1. Was the execution of the bond secured by, and the deed of trust recorded in Book 571, page 33, of the Mecklenburg County registry, procured by the false and fraudulent representations of the defendants, or either of them, that said documents constitute a deed conveying said lands to a purchaser for the sum of $3,500, as alleged in the complaint? Answer: Yes.

2. Was the execution and delivery by plaintiff of the note and deed of trust described in the complaint procured by the fraud and misrepresentation of A. R. Thomas, L. A. Waggoner, partners, trading under the firm name of Mecklenburg Realty and Insurance Company, as alleged in the complaint? Answer: Yes.

3. Did the Merchants and Farmers National Bank of Charlotte, N. C., purchase the note and deed of trust of Mary J. Parker, described in the complaint, in due course, for value, prior to the maturity thereof, and without notice of any defect therein or defense thereto? Answer: Yes, for $2,496.00.

Upon said verdict the plaintiff tendered judgment, decreeing the surrender and cancellation of the note and deed of trust. The trial judge refused to sign this judgment, but signed judgment, the material part of which is as follows: "Now, therefore, upon motion of Cansler & Cansler, attorneys for the defendants, J. A. Stokes, trustee, and Merchants and Farmers National Bank of Charlotte, N. C., it is ordered and adjudged that the promissory note dated 12 December, 1924, executed by plaintiff in favor of A. R. Thomas in the sum of $2,600, as set out in paragraph one of the further answer and defense of said bank

51—192

filed in this action, together with the deed of trust from plaintiff, J. A. Stokes, trustee for said A. R. Thomas, recorded in the office of register of deeds for Mecklenburg County, in Book 571, at page 33, as set forth in Exhibit 'A' attached to the complaint in this action, be and the same hereby are declared valid and binding obligations of the plaintiff to the extent of $2,496, with interest thereon from 15 December, 1924, until paid at 6 per cent per annum, payable semiannually on the 12th days of June and December, following the date of said note; that said bank be, and it hereby is declared and adjudged the owner and holder of said note and deed of trust in due course, for value, prior to maturity, and without notice of any infirmities therein.

It is further considered and adjudged that the said note and deed of trust above set out having been obtained by the said A. R. Thomas and L. A. Waggoner by fraud and misrepresentation it is ordered that said note and mortgage as to the said Thomas and Waggoner be declared void and of no force and effect in so far as they are concerned.

It is further ordered and adjudged that the plaintiff recover her costs of the defendants, to be taxed by the clerk of this court."

From the refusal of the judge to sign the judgment tendered by plaintiff, the plaintiff appeals, assigning errors.

*J. C. Newell and H. L. Taylor for plaintiff.*
*Cansler & Cansler for the Bank and J. A. Stokes, cashier.*

BROGDEN, J. The dominant question of law presented is, whether or not the transaction constituted fraud in the *factum* or fraud in the treaty.

If the transaction constituted fraud in the *factum,* the note and the deed of trust held by the defendant bank is a nullity and void. If, upon the other hand, the evidence discloses only fraud in the treaty, the note and deed of trust would be voidable as between the original parties thereto, but binding in the hands of a third person who was the innocent holder thereof. The rule is stated thus in *Medlin v. Buford,* 115 N. C., 260: "The first question to be considered is whether the mortgage executed by the defendants to the plaintiff is absolutely void by reason of fraud in the *factum.* If such be the case, it would be immaterial whether the plaintiff is an innocent party, since the deed being a nullity, no rights could be asserted under it in favor of any person whomsoever."

The line of demarcation between fraud in the *factum* and fraud in the treaty is frequently obscure and in a measure dependent upon the attendant facts and circumstances. There are, however, certain well recognized indicia of fraud in the treaty or negotiations between the parties. These may be classified as follows:

1. Where there is misrepresentation as to the contents of the instrument and the person signs the identical instrument which he intended to sign.

2. Where there is undue influence exerted upon the party signing an instrument; provided, of course, he has legal capacity.

3. Where the complaining party can read the instrument which he signs, seals and delivers, but fails, refuses or neglects to do so.

There are also well marked indicia of fraud in the *factum,* which may be classified as follows:

1. Surreptitious substitution of one paper for another.

2. The false reading of a deed or other instrument, upon request, to a blind or illiterate person.

3. Fraud, imposition or artifice practiced upon the person signing an instrument by means of which his signature to the instrument is procured.

4. Where the execution of the instrument is procured by trick, artifice or imposition other than false representations as to the contents of the instrument.

5. Want of identity between the instrument executed and the one intended to be executed. *McArthur v. Johnson,* 61 N. C., 317; *Medlin v. Buford,* 115 N. C., 260; *Dixon v. Trust Co.,* 115 N. C., 274; *Cutler v. R. R.,* 128 N. C., 478; *Griffin v. Lumber Co.,* 140 N. C., 519; *Lanier v. Lumber Co.,* 177 N. C., 200; *Curry v. Malloy,* 185 N. C., 206; *Furst v. Merritt,* 190 N. C., 397.

The plaintiff contends that the answer of the jury to the first issue is a finding of fraud in the *factum.* If this be true, the plaintiff was entitled to the judgment tendered by her and which was refused by the court. There was sufficient evidence of fraud in the *factum* to be submitted to the jury, but an examination of the charge of the court will disclose that this phase of the case was not presented to the jury. If there was fraud in the *factum,* the note and deed of trust never existed in contemplation of law, and the defendant bank could not recover. If, upon the other hand, there was fraud in the treaty, and the bank was an innocent holder, as defined by law, it could recover the amounts properly disbursed by it.

Under these circumstances it was the duty of the trial judge to draw the distinction between the two principles and to declare and explain the law arising on the evidence as required by C. S., 564.

In *Nichols v. Fibre Co.,* 190 N. C., 1, *Connor, J.,* says: "A failure to comply with the statute must be held as error. The error was not waived in this case by failure of the defendant to request special instructions."

The record in this case now before us discloses the identical situation that existed in the case of *Furst v. Merritt, supra.* In that case, the plaintiff was a third party, claiming to be an innocent holder of the instrument in controversy. There was evidence tending to establish fraud in the *factum* and fraud in the treaty. *Stacy, C. J.,* speaking for the Court, said: "The charge of the court, as sent up, is defective in that it fails to draw the distinction between the two pleas, and thus falls short of a declaration and explanation of the law arising on the evidence."

In this case all parties are entitled to have all issues of fact and the law arising thereon clearly and definitely presented to the jury. The record does not disclose that this was done and a new trial is awarded.

New trial.